## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEPHEN WOODRUFF | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:06-CV-00832 (RJL) |
| | ) | |
| NATIONAL OPINION RESEARCH | ) | |
| CENTER | ) | |
| | ) | |
| Defendant. | ) | |

### <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant National Opinion Research Center ("NORC" or "Defendant"), pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and this Court's Local Rules 7(h) and 56.1, hereby submits this Motion for Summary Judgment.

Plaintiff Stephen Woodruff, a former employee of NORC, brings claims for Breach of Contract, Promissory Estoppel, Fraud, and Negligent Misrepresentation. Each claim is premised upon his assertions that, during the time he was interviewing for employment with NORC in late 2004, it was orally represented to him that his employment with NORC would continue for the duration of a particular NORC project and that the project was expected to last about five years, that he accepted employment with NORC based on these representations, but that he was terminated shortly after being hired. Even accepting that the alleged oral representations were made (for purposes of this Motion), Woodruff's claims must fail. Woodruff admitted in his deposition that, after the alleged oral representations were made, NORC extended an offer of employment to him in a written offer letter. He admits that the offer letter identified the terms of his employment were he to accept. He admits that the offer letter stated he was to be an at-will employee. Further, the offer letter gave Woodruff the opportunity to raise any questions he may

have had about the terms of the offer with NORC's Human Resources Director. But Woodruff

did not inform anyone at NORC that he thought he was to be employed for the length of a

specific project nor did he make any notation on the offer letter to that effect. Rather, Woodruff

unconditionally signed and accepted the at-will employment offer.

As discussed in the accompanying memorandum of points and authorities, cases from

both this Court and the District of Columbia Court of Appeals have faced nearly identical facts

and claims as are presented in this case. In each case, the courts have rejected and dismissed the

plaintiff's claims. Just as in those cases, and for the reasons as more fully discussed in the

accompanying memorandum of points and authorities, Woodruff's claims must be dismissed.

Respectfully submitted,

NATIONAL OPINION RESEARCH CENTER

By:＿＿/s/ David M. Burns＿＿＿＿＿＿＿＿
  David M. Burns, Esq. # 466167
  Noah A. Finkel, Esq. (admitted *pro hac vice*)
  SEYFARTH SHAW LLP
  815 Connecticut Avenue, N.W., Suite 500
  Washington, DC 20006-4004
  (202) 463-2400
  (202) 828-5393 (fax)

January 16, 2007      Attorneys for Defendant

DC1 30186583.4

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEPHEN WOODRUFF | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:06-CV-00832 (RJL) |
| | ) | |
| NATIONAL OPINION RESEARCH | ) | |
| CENTER | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant National Opinion Research Center ("NORC" or "Defendant"), pursuant to Local Rules 7(h) and 56.1, hereby submits this memorandum of points and authorities in support of its Motion for Summary Judgment.

## FACTUAL BACKGROUND[1]

*NORC Overview*

NORC is a national organization for research with offices in Washington, DC and Chicago, as well as a nationwide field staff. *See* <http://www.norc.org> (last visited Jan. 9, 2007). NORC's clients include government agencies, educational institutions, foundations, other nonprofit organizations, and private corporations. *Id.* NORC's projects include complex survey and other data collection strategies as well as sophisticated empirical analyses. *Id.*

*Basis For Woodruff's Claims*

Plaintiff Stephen Woodruff asserts as the basis for his claims in this case that he believed he was to be employed for the length of NORC's National Immunization Survey contract. Pl.

---

[1]     In accordance with Local Rule 7(h), NORC is also filing a separate Statement of Material Facts Not In Dispute herewith.

Dep. at 126[2]; Complaint.  Woodruff expected the National Immunization Survey contract to last for approximately five years.  Pl. Dep. at 212.  Nevertheless, Woodruff had no expectation that he would be working on this particular contract.  Pl. Dep. at 68, 179-180.

### Woodruff Applies For Employment With NORC; The Employment Application States That Employment Is At-Will

In August of 2004, Woodruff, then a Mathematical Statistician for the United States Postal Service ("USPS"), attended the Joint Statistical Meetings of the American Statistical Association ("JSM") in Toronto, Canada, where he spoke with several organizations about working for them.  Pl. Dep. at 32, 36-37; Exh. 4.  At JSM, Woodruff submitted his resume to NORC and met with Rachel Harter, a Vice President of NORC in charge of the statistics and methodology department.  Pl. Dep. at 36, 39-40; Exh. 2 at 6 (Harter Dep.).

On August 13, 2004, Woodruff completed an NORC employment application.  Exh. 4; Pl. Dep. at 40-41.  Woodruff signed the application acknowledging the following statement:

> "I understand that employment is 'at-will' and either party may terminate the employment at any time."

Exh. 4 at 4; Pl. Dep. at 40-41.

### Woodruff Interviews At NORC's Offices and The Alleged Representations

On or about November 1, 2004, the Centers for Disease Control awarded the National Immunization Survey project ("NIS") contract to NORC.  Pl. Dep. at 126; Exh. 3 at 64, 68 (Thompson Dep.).  After NORC won the NIS contract, many of Harter's staff "were being absorbed into the NIS project, and [she] didn't have people to support the other projects."  Exh. 2 at 17-18, 64.  Thus, NORC "went back to candidates [it] had interviewed at JSM to see [with whom it] wanted to follow up."  Exh. 2 at 54.

---

[2]     Excerpts from Plaintiff Stephen Woodruff's deposition are cited as "Pl. Dep. ___" and are attached hereto as Exhibit 1.

In or about November 2004, Harter called Woodruff and invited him to interview at NORC's offices for possible employment as a statistician. Pl. Dep. at 44, 49-50; Exh.2 at 14. Woodruff interviewed with various NORC personnel on December 10, 2004, including Harter and Kirk Wolter, a Senior Fellow at NORC. Pl. Dep. at 50, 59, 67; Exh. 3 at 26.

Woodruff asserts that, during his interview with Wolter, Wolter conveyed that NORC had additional staffing requirements to fill because of the NIS project, that the project was going to last for roughly five years and the need for extra staff was going to last for a while. Pl. Dep. at 59-61. Woodruff testified that he does not recall the specific words that Wolter used during their interview, and that this was his "impression." Pl. Dep. at 61.

Woodruff further asserts that in either November or December 2004, Harter allegedly told him that he would be employed for the length of the NIS project -- a statement that Woodruff alleges was a false statement.[3] Pl. Dep. at 131-132; Compl. ¶¶ 16, 18. Woodruff admits that he "[does not] know" whether Harter knew that this was a false statement at the time she made it, and admits that it's possible she did not know it was an incorrect statement. Pl. Dep. 131-132.

Woodruff further admits that he does not now whether Harter and Wolter intended to deceive him in making the representations he attributes to them, and that it is possible that Harter and Wolter did not intend to deceive him with their alleged representations. Pl. Dep. at 131-133.

---

[3]     Although Harter denies making any such statement or representation to Woodruff, NORC accepts this allegation as true for purposes of this Motion only.

DC1 30186583.4

***NORC Offers Woodruff Employment As a Statistician; The Offer Letter Specifically States That Employment Would Be At-Will***

On January 5 or 6, 2005, Yvonne Johnson, an NORC Human Resources representative, called Woodruff.  Pl. Dep. at 52, 81.  Johnson told Woodruff that NORC was extending him an offer of employment with a salary of $108,000 per year, and that NORC would be sending him a letter to sign and return.  Pl. Dep. at 75.

On January 10 or 11, 2005, NORC sent to Woodruff a written employment offer letter dated January 10, 2005 ("Offer Letter) just as  Johnson had indicated would be forthcoming.  Pl. Dep. at 92-93; Exh. 5.  The Offer Letter offered Woodruff a position as a Senior Statistician II, and, as Woodruff has admitted, contained various terms that, were he to accept, he expected would be part of his employment with NORC (e.g., salary, paid time off, benefits).  Exh. 5; Pl. Dep. at 98-100.  The Offer Letter, without condition, informed Woodruff:

> While it is anticipated that your employment with NORC will be productive and mutually beneficial, it is important for you to understand that *all NORC employees are 'at-will', which means that you or NORC may, for any reason or no reason, discontinue the employment relationship at any time*.

Exh. 5 (emphasis added).  The Offer Letter instructed Woodruff to "call [NORC's Director of Human Resources] directly if you have any question about our offer."  Exh. 5.  The Offer Letter further stated: "To formally accept this offer of employment, please sign below and return it to" the Director of Human Resources.  Exh. 5.

Woodruff admits that the Offer Letter does not say that he would be employed for the length of the NIS contract.  Woodruff also admits that he did not make any notation on the letter to suggest that he should be employed for the length of the NIS contract.  Pl. Dep. at 101.  Once Woodruff received the Offer Letter and read it, he did not tell anyone that he thought he was supposed to be employed for the length of the NIS contract.  Pl. Dep. at 97, 101.  Rather, on January 11, 2006, Woodruff signed the Offer Letter stating: "I understand and accept the terms

of this offer of employment.  I understand that this offer provides no guarantee of continued employment . . . ."  Exh. 5; Pl. Dep. at 93.  Woodruff then returned the signed Offer Letter to NORC.  Pl. Dep. at 95.

**After Signing The Offer Letter, Woodruff Submits His Request For Retirement to the USPS**

On January 12, 2005, the day after signing the Offer Letter, Woodruff completed and signed his application for immediate retirement from the USPS.  Pl. Dep. 21; Exh. 6.  Woodruff submitted the retirement form to USPS human resources on January 12 or 13, 2005, and his completed form bears a USPS human resources date stamp of January 13, 2005.  Pl. Dep. at 21, 23; Exh. 6.

After receiving the Offer Letter, Woodruff could have chosen to stay employed with USPS and not submitted the retirement form. Pl. Dep. at 108-109.  Even after having submitted the retirement form, Woodruff could have withdrawn his request for retirement.  Pl. Dep. at 74-75.

**Woodruff's Employment With NORC And Termination**

Woodruff retired from the USPS effective February 23, 2005 and began working for NORC on February 28, 2005.  Pl. Dep. at 15, 55.  Woodruff was terminated from NORC on June 16, 2005 as part of a reduction in force in which other NORC employees also were laid off.  Pl. Dep. at 113; Exh. 3 at 44, 95-99.

## ARGUMENT

Woodruff brings four claims in this case: Breach of Contract (Count III), Promissory Estoppel (Count IV), Fraud (Count I), and Negligent Misrepresentation (Count II).  *See* Complaint.  Each claim is premised upon Woodruff's purported belief that his employment with NORC would continue for the duration of the NIS project, which he expected to last for about

5

five years, but that his employment was terminated shortly after being hired.  In support of these claims, he asserts that before receiving the Offer Letter: (1) Wolter represented to him that NORC had additional staffing requirements to fill because of the NIS project, that the project would last for roughly five years and the need for extra staff would continue; and (2) Harter allegedly told him that he would be employed for the length of the NIS project.  Even assuming for purposes of this Motion that these allegations are true, Woodruff's claims fail as a matter of law.

## I.     BREACH OF CONTRACT CLAIM

Woodruff's Breach of Contract claim alleges that, based on the oral representations of Wolter and Harter, he had a contract of employment with NORC to be employed for the length of the NIS project, which he expected to last for about five years, but that his employment was terminated shortly after being hired.  As a matter of law, however, Woodruff had a contract for at-will employment, not a contract of employment for a definite period of time.  His Breach of Contract claim therefore must fail.

### A.     Woodruff Had A Contract For At-Will Employment With NORC

"In the District of Columbia, . . . the employment relationship is presumed to be terminable at will by either employer or employee." *Willoughby v. Potomac Electric Power Co.*, 100 F.3d 999, 1001 (D.C. Cir. 1996).  "Contracting parties may rebut the presumption of terminable-at-will employment only by '*stating clearly* their intention to do so.'" *Minihan v. American Pharmaceutical Ass'n*, 812 F.2d 726, 728 (D.C. Cir. 1987) (emphasis in original).  An employee's "subjective belief in the permanence of his employment does not create a material issue as to whether he and [the employer] *together* agreed to [permanent] employment." *Id.* (emphasis in original).

6

Moreover, all employment is contractual, even at-will employment. "Under District of Columbia law, 'the mutual promise to employ and serve creates a contract terminable 'at-will' by either party." *Daisley v. Riggs Bank*, 372 F. Supp.2d 61, 67 (D.D.C. 2005). "At-will employment should not be viewed as the absence of contract, but as a 'species of contract,' a principle 'well settled' in the District of Columbia." *Id.*; *cf. Schecter v. Merchants Home Delivery*, 892 A.2d 415, 424 (D.C. 2006) ("the agreement was similar to an at-will employment contract").[4] Thus, the question in this case is whether Woodruff had a contract of employment with NORC for a definite period of time or whether he had a contract for at-will employment.

*Daisley*, 372 F.Supp.2d 61, is on point. There, the plaintiff was employed when the defendant employer made overtures about hiring him. 372 F. Supp.2d at 64. The plaintiff was reluctant to leave his current employment, but two senior executives of the defendant employer "assured him he would be guaranteed a 'minimum six-year term of employment'...." *Id.* The defendant then presented plaintiff with an offer letter stating that his employment would be "at-will" and that either the plaintiff or defendant "may end the employment relationship at any time with or without cause or notice." *Id.* at 65, 68. The offer letter further stated that it "confirms our oral offer of employment," invited the plaintiff to contact the defendant's human resources director if the offer letter failed to include any terms that plaintiff expected, and directed the plaintiff to sign the offer letter. *Id.* at 69. The plaintiff "signed the offer letter, but 'with the understanding that his term of employment was for a minimum of six years'...." *Id.* at 65. The

---

[4]     Other jurisdictions likewise recognize the contractual nature of employment at-will. *See, e.g., Hrehorovich v. Harbor Hosp. Ctr., Inc.*, 614 A.2d 1021, 1030 (Md. Ct. Spec. App. 1992) (noting that even at-will employment is a contractual relationship -- a contract for an indefinite duration rather than for a fixed term, but contractual nonetheless); *County of Giles v. Wines*, 546 S.E.2d 721, 723 (Va. 2001) (plaintiff had an "employment at-will contract with the [defendant]," and the key distinction between an at-will employment contract and one that is not at-will is whether the "employment is for a definite, rather than an indefinite, term.").

defendant later terminated the plaintiff long before six years had passed. *Id.* at 66. The plaintiff

then brought a lawsuit against the defendant employer for breach of contract (and promissory

estoppel), arguing that he was not an at-will employee. *Id.* at 64, 68. The plaintiff asserted that

the written offer letter contained "'some, but not all, of the components of the verbal offers and

commitments that [he] had received," and, specifically, that it did not include the oral

"assurances of a minimum six-year term of employment" made to him by the defendant's senior

executives. *Id.* at 68.

　　　The Court rejected the plaintiff's argument that he was not an at-will employee. *Id.* at 70.

The Court's analysis started with the presumption that employment in the District of Columbia is

at-will, and that the presumption may only be rebutted by "evidence of clear contractual intent on

the part of both the employer and the employee" to the contrary. *Id.* at 68. The Court noted that

although the offer letter did not include a "formal integration clause," "'[w]here the parties

reduce an agreement to a writing which in view of its completeness and specificity reasonably

appears to be a complete agreement, it is taken to be an integrated agreement unless it is

established by other evidence that the writing did not constitute a final expression.'" *Id.* at 69.

The Court noted that there was no ambiguity in the offer letter, that the plaintiff had the

opportunity to bring to the defendant's human resources director any terms that should have been

included in the letter, but that the plaintiff  signed the offer letter as written. *Id.* Accordingly,

the Court determined that the offer letter, which indicated that the plaintiff's employment would

be at-will and did not mention the alleged oral assurances of employment for six years,  was an

integrated agreement that "supersedes all other understandings and agreements with respect to

the subject matter of the agreement between the parties." *Id.* at 68-70. Accordingly, the Court

held that the plaintiff had not rebutted the presumption of at-will employment, that he had a

contract for at-will employment, and held that "he has no remedy in contract law for his termination." *Id.* at 70, 71.

Just so here. Woodruff alleges that, based on the representations of Wolter and Harter made before he received the Offer Letter, he thought he would be employed by NORC for the length of the NIS project which he expected would last for about five years. But, as in *Daisley*, NORC then presented Woodruff with a written Offer Letter that, without exception, stated he would be an at-will employee and invited him to contact NORC's Human Resources Director to raise any issues he had with the Offer Letter. Even Woodruff admits that the Offer Letter does not say that he would be employed for the length of the NIS contract. Pl. Dep. at 101. Furthermore, after receiving the offer letter, Woodruff did not make any notation on the letter to suggest that he should be employed for the length of the NIS contract, nor did he tell anyone that he thought he was supposed to be employed for the length of the NIS contract. Pl. Dep. at 101. Rather, Woodruff signed the Offer Letter stating: "I understand and accept the terms of this offer of employment. I understand that this offer provides no guarantee of continued employment . . . ." Exh. 5; Pl. Dep. at 93. Thus, as in *Daisley*, NORC's Offer Letter was a clear and integrated agreement for at-will employment. As such, his claim for Breach of Contract must be dismissed.

Other cases from this Court and the District of Columbia Circuit Court of Appeals with facts similar to the one in this case lead to the conclusion that Woodruff's Breach of Contract fails as a matter of law. In *Shankar v. ACS-GSI*, 2006 WL 1073073, Case No. 02-1370-RMC, *1 (Apr. 24, 2006), the plaintiff alleged that the defendant employer had "breached an oral agreement to employ him for five years." The plaintiff had signed an employment application "that expressly provided, 'I understand that should I be employed by [defendant] my employment is 'at will.'" *Id.* at *3. The plaintiff also "signed two offer letters, neither of which

specified a term of employment." *Id.* The Court held that "all of the evidence demonstrates that the parties had an at-will relationship" and that the plaintiff "failed to present any evidence whatsoever that [the defendant] was bound by a five year contract." *Id.* at *4. Therefore, the Court granted summary judgment to defendant and dismissed the breach of contract claim.

In *Minihan v. American Pharmaceutical Ass'n*, 812 F.2d 726, 726 (D.C. Cir. 1987), the plaintiff brought a breach of contract claim asserting that he was "guaranteed . . . 'permanent' employment for 'as long as [he] performed his job satisfactorily and wanted to keep his job.'" The plaintiff had interviewed with the defendant's president during which the president "'took special pains to point out the number of staff members whom he had worked with for many years'" thereby emphasizing the normal longevity of the defendant's employees. *Id.* at 727, 728. The president offered the plaintiff "'full time, permanent employment.'" *Id.* at 727. The next day, the plaintiff "signed a letter that described his employment as 'Full time, Permanent.'" *Id.* This letter constituted the "employment contract." *Id.* Later, and despite plaintiff's satisfactory job performance, the defendant discharged the plaintiff. *Id.* The court held that the plaintiff had not rebutted the presumption of at-will employment. *Id.* at 728. The court determined that the plaintiff's "testimony concerning how he alone interpreted the terms of his employment" was "patently irrelevant" and did not create "a material issue as to whether he and [the defendant] *together* agreed to lifetime employment." *Id.* Accordingly, the court affirmed the district court's grant of summary judgment to defendant. *Id.* at 729.

As in *Shankar*, Woodruff signed NORC's employment application, acknowledging: "I understand that employment is 'at-will' and either party may terminate the employment at any time." Exh. 4 at 4; Pl. Dep. at 40-41. Woodruff further has no evidence that NORC agreed to employ him for the length of the NIS contract other than his patently irrelevant belief that his

employment would last for that period.  To the contrary, the Offer Letter and employment

application made abundantly clear that NORC's offer of employment to Woodruff was for at-

will employment without any exception.  Woodruff accepted this offer unconditionally.

Woodruff thus cannot rebut the presumption of at-will employment.

"Termination of employment . . . does not breach an at-will employment contract,

because by its very terms the agreement contemplates that either party may end the employment

relationship, with or without cause."  *Daisley*, 372 F. Supp.2d at 67.  Because Woodruff's

employment was unquestionably at-will, his Breach of Contract claim should be dismissed.

### B.    Woodruff's Breach of Contract Claim Is Barred By The Statue Of Frauds

Woodruff's Breach of Contract claim also fails for the additional reason that it is barred

by the District of Columbia Statute of Frauds.[5]  The District Of Columbia's general Statute of

Frauds states:

> An action may not be brought . . . upon an agreement that is not to be performed
> within one year from the making thereof, unless the agreement upon which the
> action is brought, or a memorandum or note thereof, is in writing, . . . and signed
> by the party to be charged therewith or a person authorized by him.

D.C. Code § 28-3502.

"An oral employment contract for a stated, definite term of years exceeding one year . . .

is unenforceable" under the Statute of Frauds.  *Hodge v. Evans Financial Corp.*, 823 F.2d 559,

563 (D.C. Cir. 1987); *see also Brown v. News World Communications, Inc.*, 54 Fair Empl. Prac.

Cas. (BNA) 211, 213-214 (D.D.C. 1990) (dismissing on Statute of Frauds grounds the plaintiff's

---

[5]    On June 29, 2006, NORC filed a Rule 12(b) Motion to Dismiss Plaintiff's Breach of
Contract claim on Statute of Frauds grounds.  The Court summarily denied the motion in a
Minute Order on December 8, 2006.  Because discovery has clarified that Woodruff expected the
NIS project to last for about five years, NORC reasserts this argument based on this discovery.

breach of contract claim in which his alleged guaranteed term of employment for two years was not reflected in writing).

Here, Woodruff alleges that he was to be employed for the length of the NIS project. Woodruff testified during his deposition that he expected the NIS project to last for "approximately" five years, and that he had "an expectation . . . of employment for" "approximately" five years.  Pl. Dep. at 148-149, 212.  Moreover, Woodruff asserts damages for lost income "he would have earned if [he] had stayed with NORC for an additional five years."  Pl. Dep. at 147-149.  Thus, Woodruff asserts that he had a contract of employment for about five years.  Because such alleged agreement is not evidenced in writing, it is barred by the Statute of Frauds.

## II.    PROMISSORY ESTOPPEL CLAIM

Like his Breach of Contract claim, Woodruff's Promissory Estoppel claim is premised on the assertion that Harter promised him employment for the length of the NIS contract.  This claim fails for two reasons: (1) Woodruff had an express, enforceable contract of employment at-will with NORC; and (2) Woodruff could not have reasonably relied on the alleged representation that he would be employed for the length of the NIS contract.

"[T]o establish a promissory estoppel claim, the plaintiff must show (1) a promise; (2) that the promise reasonably induced reliance on it; and (3) that the promisee relied on the promise to her detriment."  *Daisley*, 372 F. Supp.2d at 61.  "Promissory estoppel, however, is not available in all circumstances; District of Columbia law 'presupposes that an express, enforceable contract is absent when the doctrine of promissory estoppel is applied.'"  *Id.* (citing *Int'l Bus. Mach. Corp. v. Medlantic Healthcare Group*, 708 F. Supp. 417, 424 (D.D.C. 1989) ("noting that 'courts have held that an integrated written contract controls as against any and all

prior inconsistent oral agreements or promises; such a contract nullifies the effect that promissory estoppel might otherwise have.'")).  "'[A] party may not assert a promissory estoppel claim where there is an enforceable contract.'"  *Id.* (citing *Bynum v. Equitable Mortg. Group*, 2005 WL 818619 at *16 (D.D.C. April 7, 2005)).

In *Daisley*, as noted in Section I above, the plaintiff alleged that he had a contract of employment for six years based on alleged oral representations.  372 F. Supp.2d at 68.  The Court rejected the plaintiff's argument and found that the subsequent employment offer letter that the plaintiff signed, and which stated that the plaintiff would be an at-will employee, was a contract for at-will employment.  *Id.* at 70, 71.  The plaintiff also brought a claim for promissory estoppel.  The Court dismissed the promissory estoppel claim on the ground that the plaintiff had an enforceable contract for at-will employment.  *Id.* at 71.  In rejecting the promissory estoppel claim, the Court also noted that "reliance on a promise cannot be reasonable when it is completely at odds with the terms of a written agreement covering the same transaction."  *Id.* at 71 n.5.

As in *Daisley*, the written Offer Letter that Woodruff signed was an enforceable contract of at-will employment with NORC.  Thus, Woodruff cannot maintain his Promissory Estoppel claim, and it should be dismissed.

Woodruff's claim also fails because he could not have reasonably relied on the alleged promise that he would be employed for the length of the NIS project.  The Offer Letter unequivocally informed Woodruff that his employment with NORC would be at-will, which is completely at odds with Harter's alleged representation that Woodruff would be employed for the length of the NIS project.  Thus, Woodruff's reliance on Harter's representation could not have been reasonable..

13

III.    **FRAUD CLAIM**

Woodruff's fraud claim cannot survive summary judgment because he entered into a written at-will employment contract with NORC when he accepted the terms of the Offer Letter and he cannot now claim the Offer Letter meant something different than what it plainly said. Summary judgment should also be granted because Woodruff cannot establish the elements of a common law fraud claim.

A.    **Woodruff Cannot Claim That He Was Fraudulently Induced Where He Had A Contract For At-Will Employment With NORC**

In *Tonn v. Philco Corp.*, 241 A.2d 442 (D.C. 1968), the plaintiff brought a fraud claim against his employer. The plaintiff claimed that the defendant employer's manager "orally promised him" that he "would be employed for a minimum of one year," but he was discharged in less than one year after starting work for the defendant. *Id.* at 442.

The plaintiff sued the defendant claiming that he was "induced by fraudulent misrepresentation to leave his former employer and accept employment with [the defendant]" and that the "misrepresentation was an alleged oral promise that he would be guaranteed employment for one year." *Id.* at 444. The manager made this alleged oral promise and then sent to the plaintiff a letter regarding terms of his employment, "but the letter said nothing about a guaranteed one-year employment." *Id.* at 444-45. The letter "concluded by stating: 'If you have any questions concerning the position or company benefits, please do not hesitate to contact us.'" *Id.* The plaintiff "unequivocally accepted the offer." *Id.* at 445. Within a few days of commencing employment, the plaintiff signed an agreement that stated "his employment was not for any definite term and could be terminated at any time by either [the defendant] or [the plaintiff]." *Id.* at 442, 445. The defendant terminated the plaintiff in less than one year. *Id.*

The court directed that judgment be entered in the defendant's favor. *Id.* at 445. The court held that where "parties enter into enter into a written contract, their rights must be controlled by their contract. Its terms cannot be varied by parol evidence and in effect this is what [the plaintiff] sought to do. Nor can [the plaintiff], under the circumstances here disclosed, claim that he was fraudulently induced to believe that the contract he signed meant something different from what it plainly said. 'If this were permitted, contracts would not be worth the paper on which they are written.'" *Id.*

This case is nearly identical to the *Tonn* decision. Woodruff asserts that it was orally represented to him that he would be employed for the length of the NIS project, and that this was a misrepresentation that induced him to leave his employment with USPS to work for NORC. But NORC provided Woodruff with the Offer Letter which clearly stated that his employment would be at-will and that he had no guarantee of continued employment. Exh. 5. The offer letter further invited Woodruff to contact NORC's Human Resources Director if he had any questions about NORC's offer. Woodruff made no inquiries and did not tell anyone at NORC that he thought his employment, based on the alleged prior representations, was to last for the length of the NIS project. Rather, he unequivocally accepted the offer, signing the Offer Letter and acknowledging that he understood he had no guarantee of continued employment.

Just as in *Tonn*, Woodruff's Fraud claim cannot survive. To hold otherwise would be to improperly permit Woodruff to vary the terms of the parties' at-will employment agreement.

### B.     Woodruff Cannot Establish The Elements Of His Fraud Claim.

"At common law, the requisite elements of fraud are: (1) 'a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation,' and 'at least in cases

involving commercial contracts negotiated at arm's length there is the further requirement (6) that the defrauded party's reliance be reasonable.'" *Daisley*, 372 F. Supp.2d at 78. "Failure to prove any one element of fraud causes a fraud claim to fail." *Smith v. Washington Metropolitan Area Transit Authority*, 1997 WL 182286, Case No. 95-0687-LFO, *11 (D.D.C. 1997) (emphasis in original), *aff'd*, 1998 WL 315575 (D.C. Cir. May 28, 1998)

Woodruff cannot meet the third and fourth elements necessary to sustain a fraud claim. Woodruff asserts that in either November or December 2004, Harter allegedly told him that he would be employed for the length of the NIS project -- a statement that Woodruff alleges was false. Pl. Dep. at 131-132; Compl. ¶¶ 16, 18. Woodruff admits that he "[does not] know" whether Harter knew that this was a false statement at the time she made it, and admits that it is possible she did not know it was an incorrect statement. Pl. Dep. at 131-132. Woodruff further admits that he does not now whether Harter and Wolter intended to deceive him in making the representations he attributes to them, and that it is possible that Harter and Wolter did not intend to deceive him with their alleged representations. Pl. Dep. at 131-133.[6] Thus, Woodruff, who himself is unsure of whether the representations were made with knowledge of their alleged falsity and is unsure of whether there was an intent to deceive, cannot establish the third and fourth elements of a fraud claim.

Woodruff also cannot maintain his Fraud claim because any reliance he placed on the alleged misrepresentations was not reasonable – the sixth element necessary to establish a fraud claim. "To establish a claim of either negligent misrepresentation or fraudulent inducement of employment a plaintiff must show, *inter alia*, that he *reasonably* relied upon the false

---

[6]     It is also curious to note that, in his Complaint, Woodruff alleges that it was represented to him and that he believed that he "would work on the National Immunization Survey." Compl. ¶ 19. Yet, during his deposition, Woodruff disclaimed any such representation or expectation. Pl. Dep. at 68, 104, 179-180.

information to his detriment." *Smith*, 1997 WL 182286, *5 (emphasis in original). The plaintiff's "claims for negligent misrepresentation and fraudulent inducement of employment must also fail because no reasonable trier of fact would find that [plaintiff's] reliance upon [his supervisor's] representations were objectively reasonable." *Id.* "[C]ourts have consistently held as a matter of law that it is unreasonable for plaintiffs to rely on oral assurances when such assurances are contradicted by written agreements to the contrary." *Id.* The plaintiff "cannot demonstrate reasonable reliance because . . . no reasonable trier of fact could conclude that plaintiff was entitled to rely upon oral representations of his superior that were contradicted by the express written provisions. . . ." *Id.*

In *Washington v. Thurgood Marshall Academy*, 2006 WL 1722332, Case No. 03-2570-CKK (D.D.C. June 19, 2006), the plaintiff brought a fraudulent misrepresentation claim against the defendant employer. The plaintiff claimed that, in an interview prior to accepting employment, the defendant employer had misrepresented the duties she would be expected to perform, did so in an effort to fraudulently induce her to accept employment, and that, after she began working for defendant, her duties expanded. *Id.* **1-2, 11. Before beginning work for defendant, however, the plaintiff executed an agreement that identified the duties that she would have to perform and which encompassed the duties she claimed were expanded beyond what had been represented to her. *Id.* **2, 10. The Court held that the plaintiff's reliance on the alleged oral representations was not reasonable in light of the subsequent and contrary written agreement:

> Plaintiff cannot demonstrate her reliance on [the defendant's] alleged misleading statements was reasonable. Plaintiff seeks to rely on informal comments made during a five minute interview in preference to the contrary text of a written contract. Reliance on informal statements inconsistent with a written agreement is generally not reasonable under D.C. law.

17

*Id.* *12.  Accordingly, the Court granted summary judgment to defendant on the plaintiff's fraud claim.  *Id.* *1.

Here, Woodruff's reliance on the alleged misrepresentations by Harter and Wolter was not reasonable in light of the subsequent Offer Letter.  The Offer Letter plainly informed Woodruff that, were he to accept the employment offer, his employment would be at-will, which is directly contrary to the representations or impression Woodruff got from the representations he attributes to Harter and Wolter.[7]

## IV.    NEGLIGENT MISREPRESENTATION CLAIM

Woodruff's negligent misrepresentation claim must fail because he cannot show that he reasonably relied on any alleged false statement.  To establish a claim for negligent misrepresentation, "the plaintiff must prove: (1) a false statement or omission of fact which the defendant had a duty to disclose, (2) involving a material issue, (3) on which the plaintiff reasonably relied to [his] detriment."  *Anderson v. USAA Casualty Ins. Co.*, 221 F.R.D. 250, 254 (D.D.C. 2004); *see also Burlington Ins. Co. v. Okie Dokie, Inc.*, 329 F. Supp. 2d 45, 48 (D.D.C. 2004).  As noted in Section III above, it is unreasonable for plaintiffs to rely on oral assurances when such assurances are contradicted by written agreements to the contrary.  *Smith*, 1997 WL 182286, *5.  Thus, just as with Woodruff's Fraud claim, as discussed in further detail in Section III, Woodruff's Negligent Misrepresentation claim must fail -- he could not have reasonably relied on the alleged misrepresentations as they were in direct conflict with the subsequent written Offer Letter, Woodruff's written at-will employment agreement.

---

[7]      Moreover, Woodruff did not notify the USPS that he would be retiring from his UPSS employment until *after* receiving and signing the NORC Offer Letter. Pl. Dep. at 21, 23; Exh. 6. As Woodruff admits, after receiving the Offer Letter, he could have chosen to stay employed with USPS and not submitted the retirement form.  Pl. Dep. at 108-109.

## CONCLUSION

For all of the foregoing reasons, Defendant NORC respectfully requests that the Court enter summary judgment in its favor and dismiss Woodruff's claims with prejudice.

Respectfully submitted,

NATIONAL OPINION RESEARCH CENTER

By: ____/s/ David M. Burns_____
    David M. Burns, Esq. # 466167
    Noah A. Finkel, Esq. (admitted *pro hac vice*)
    SEYFARTH SHAW LLP
    815 Connecticut Avenue, N.W., Suite 500
    Washington, DC 20006-4004
    (202) 463-2400
    (202) 828-5393 (fax)

January 16, 2007             Attorneys for Defendant

DC1 30186583.4