CONFIDENTIAL - FOR ATTORNEYS EYES ONLY

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEPHEN WOODRUFF,                )
                                 )
        Plaintiff,               )
                                 )
    -vs-                         )   No. 1:06-CV-00832(RJL)
                                 )
NATIONAL OPINION RESEARCH        )
CENTER,                          )
                                 )
        Defendant.               )

The Rule 30(b)(6) deposition of JOHN THOMPSON, called by the Plaintiff, for examination, taken pursuant to notice and pursuant to the Federal Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken before Tamara Manganiello, Registered Professional Reporter and Notary Public, at Suite 2400, 131 South Dearborn Street, Chicago, Illinois, on the 16th day of November, A.D., 2006, commencing at 11:11 a.m.

CONFIDENTIAL - FOR ATTORNEYS EYES ONLY

Page 26

1  department?
2      A.    Statistics and methodology.
3      Q.    And what is her title?
4      A.    Vice president.
5      Q.    And Kirk Wolter, what's his
6  department?
7      A.    Kirk Wolter is a senior fellow.
8      Q.    What's that and does he have areas of
9  responsibility?
10     A.    He is a senior fellow and he's the
11 director for the center for excellence in survey
12 research.
13     Q.    How long have you been employed by
14 NORC?
15     A.    A little over four years.
16     Q.    And there's two other executive vice
17 presidents?
18     A.    Yes.
19     Q.    And what are their names?
20     A.    James Dunne, Dan Gaylin.
21     Q.    And who do you report to?
22     A.    Craig Coelen.
23     Q.    Craig who?
24     A.    Coelen.

CONFIDENTIAL - FOR ATTORNEYS EYES ONLY

Page 44

1   A.   I don't recall exactly.

2   Q.   As best you can.

3   A.   It was on the order of that this was a
4   person that we should terminate.

5   Q.   Okay.

6   A.   He was part of our layoffs.  It was
7   very difficult to do but, nevertheless, we had to do
8   that.

9   Q.   Were you aware at the time that
10  Mr. Woodruff had left his position with the
11  government to come to work for NORC?

12  A.   Yes.

13  Q.   And did you know that he was going to
14  retire from the government at the time that he left
15  his position with NORC?

16  A.   At the time he left his position with
17  NORC?

18  Q.   No.  At the time that he left the
19  government and started with NORC.

20  A.   So he left the postal service?

21  Q.   Yes.  Did you know he was going to
22  retire?

23  A.   Yes.

24  Q.   Okay.  Do you have any information

CONFIDENTIAL - FOR ATTORNEYS EYES ONLY

Page 64

1      MR. BURNS: You have to say yes or no
2  for the court reporter.
3  BY THE WITNESS:
4      A.   Yes. I'm sorry.
5  BY MR. HANTZES:
6      Q.   Now, when I turn over to the next
7  page -- and let the record reflect you're looking at
8  Exhibit 6 -- it says date of contract award is
9  June 30, 2006.
10     A.   Where are you looking?
11     Q.   At the top of Page 403, six lines
12 down.
13     A.   Exactly.
14     Q.   Okay.
15     A.   This was a schedule that they had put
16 in the initial offering, which they attached to this
17 piece of paper (indicating) they signed -- that
18 they'd signed for the contract. And in the RFP they
19 had initially anticipated awarding the contract in
20 June of 2006. The competition for the contract at
21 the CDC apparently took longer than they had planned
22 and so they were not able to award the contract
23 until 10/29/04.
24     Q.   But you signed the contract in '04.

CONFIDENTIAL - FOR ATTORNEYS EYES ONLY

Page 68

1  she didn't sign it --

2      Q.   Right.  I saw that.

3      A.   -- until 11/1.  So, in effect, the
4  contract wasn't awarded until probably 11/2 of '04.

5      Q.   So that's the actual award date and
6  the term then is from 11/1/04 through June 30, 2008?

7      A.   Yes.

8      Q.   Okay.  And at the time that you won
9  this contract, did you believe that you were going
10 to receive the optional phases also?  Did you think
11 that was likely?

12     A.   We didn't -- I guess I didn't think if
13 it was likely or not.  I thought that if we did a
14 good job on the first three phases, we would be
15 awarded the optional phase.

16     Q.   Okay.

17     A.   So my objective was to do a good job
18 on the first three phases.

19     Q.   Okay.  And the optional phases, were
20 they -- and they were not optional, the government
21 was going to do them?  Was that something for sure,
22 they were going to do them?

23     A.   No, since they were options.

24     Q.   Okay.  I was asking you whether they

CONFIDENTIAL - FOR ATTORNEYS EYES ONLY

1  correct?

2      A.  That's correct.

3      Q.  All right. So that the cut that
4  you're talking about wasn't permanent, it was just
5  deferred that you're talking about in the answer to
6  the interrogatory; isn't that correct?

7      A.  I didn't have $2 million at that point
8  in time. I had just lost $2 million I was planning
9  to spend for fiscal year 2005 which covered paying
10 staff, paying interviewers and I didn't have it. So
11 I did not have $2 million. And I had to take
12 corrective actions because of that, which included
13 releasing interviewers that were doing interviewing
14 and moving people off the project, shutting down
15 work. And those people had to go somewhere. And
16 so, as a company, we had to make layoffs taking this
17 into account and the Qatar project.

18          It doesn't matter if I expect to
19 get money four months down the road. The fact of
20 matter is I don't have money now and I can't pay
21 people and so we had to take action. And we did.
22 And, basically, that's how the layoffs came about.

23     Q.  Let me ask you do you know if anybody
24 ever told Mr. Woodruff about the Qatar contract or

CONFIDENTIAL - FOR ATTORNEYS EYES ONLY

Page 96

1  that it was being terminated -- that amounts were
2  being reduced in that contract?  Do you know if
3  Mr. Woodruff was ever told anything about Qatar?  Do
4  you personally know?
5        A.    No.
6        Q.    Okay.  So you didn't tell him?
7        A.    No.
8        Q.    Okay.  Did Ms. Harter tell you that
9  she told Mr. Woodruff anything about a reduction in
10 the Qatar contract at the time of his termination?
11       A.    At the time of his termination?
12       Q.    Yes.
13       A.    Ms. Harter told me that she had
14 explained, as you see in the answer to our
15 interrogatory, that that was the reason he was being
16 terminated, that we had had a shortfall on the Qatar
17 project, we had a shortfall on the NIS project and
18 we were having to make layoffs within the company
19 and he was being terminated as a result.  That's
20 what Ms. Harter told me.  This is paraphrasing
21 undoubtedly what Ms. Harter told me.  I don't
22 remember exactly what Ms. Harter told me in June of
23 2005.
24       Q.    Okay.  Take a look at Document 554.

Page 97

1   A.   Okay.

2   Q.   What is this, please?

3        MR. BURNS: Take your time to look at

4   it, John.

5   BY THE WITNESS:

6   A.   I believe this is the information we

7   provided to you and Mr. Woodruff in response to a

8   request you made about terminations at NORC.

9   BY MR. HANTZES:

10  Q.   And these were the people that were

11  terminated?

12  A.   I believe that's correct.

13  Q.   Which one of these persons were

14  terminated as a result of the alleged reduction in

15  the amount of money?

16       MR. BURNS: And I would just state for

17       the record that Mr. Pryjma is the one who's

18       been designated to address people terminated

19       within 45 days of Mr. Woodruff.  But go

20       ahead, John.

21  BY THE WITNESS:

22  A.   I certainly wouldn't want to --

23  BY MR. HANTZES:

24  Q.   I'm not asking you who was terminated

CONFIDENTIAL - FOR ATTORNEYS EYES ONLY

Page 98

1  within 45 days. I'm asking you, looking at this
2  list, which of these persons can you identify? You
3  said earlier in your testimony you had a
4  conversation with Ms. Harter about who was being
5  terminated as a result of this. I'm asking you to
6  identify them.
7       A.    To the best of my recollection, which
8  could be somewhat questionable, it was those people
9  terminated between 6/16 and 6/20.
10      Q.    Well, you remembered talking about --
11 I mean, Woodruff is in there. You remember talking
12 about Woodruff. Is Woodruff the only one from
13 Ms. Harter's division that was terminated as a
14 result of this reduction in income?
15      A.    No. There was another one terminated,
16 and that was Carol Emmons. So she was also
17 terminated as a result of the reductions.
18      Q.    Is she in there in that group?
19      A.    I'm sorry. She's not. It shows her
20 last day is 7/1/2005. Another one terminated in
21 that group --
22      Q.    Let me circle it. Where is Emmons?
23      A.    7/1/2005.
24      Q.    Okay.

```
 1      A.      There's another gentleman that was
 2   terminated then, 7/8/2005.
 3      Q.      And that's who, Samuel Yount.
 4      A.      No.  A Robert Bailey.
 5      Q.      A Robert Bailey?
 6      A.      Right.  And I also believe that as a
 7   result of the actions, those people involved with
 8   the telephone shop.
 9      Q.      These two down here (indicating)?
10      A.      Uh-huh.
11      Q.      Walter Chan and Sadia Gul?
12      A.      Uh-huh.
13      Q.      Okay.  At the time that Mr. Woodruff
14   was hired, what work was available for him to work
15   on?  What specific projects were available for him
16   to work on?
17      A.      I don't know exactly what projects
18   were available.  I know Ms. Harter had projects in
19   mind for Mr. Woodruff when he was hired.
20      Q.      Okay.  Describe the performance of
21   Carol-Ann Emmons.  Characterize her work
22   performance.
23      A.      It was deficient for a senior survey
24   director in her position.  There were significant
```

CONFIDENTIAL - FOR ATTORNEYS EYES ONLY

Page 141

```
 1    STATE OF ILLINOIS    )
                           ) SS.
 2    COUNTY OF W I L L    )

 3

 4           I, Tamara Manganiello, a notary public

 5    within and for the County of Will and State of

 6    Illinois, do hereby certify that heretofore, to-wit,

 7    on the 16th day of November, A.D., 2006, personally

 8    appeared before me at Suite 2400, 131 South Dearborn

 9    Street, in the City of Chicago, County of Cook and

10    State of Illinois, JOHN THOMPSON, a witness, called

11    by the Plaintiff in a certain cause now pending and

12    undetermined, wherein STEPHEN WOODRUFF is the

13    plaintiff and NATIONAL OPINION RESEARCH CENTER is

14    the defendant.

15           I further certify that the said

16    witness, JOHN THOMPSON, was by me first duly sworn

17    to testify the truth, the whole truth and nothing

18    but the truth in the cause aforesaid; that the

19    testimony then given by him was by me reduced to

20    writing by means of shorthand in the presence of

21    said witness and afterwards transcribed upon a

22    computer, and the foregoing is a true and correct

23    transcript of the testimony so given by him as

24    aforesaid.
```

CONFIDENTIAL - FOR ATTORNEYS EYES ONLY

Page 142

1    I further certify that the reading
2    and signing of said deposition was reserved by the
3    witness.
4    I further certify that the taking of
5    the deposition was pursuant to notice, and that
6    there were present at the taking of the deposition
7    the aforementioned parties.
8    I further certify that I am not
9    counsel for nor in any way related to any of the
10   parties to this suit, nor am I in any way interested
11   in the outcome thereof.
12   In testimony whereof I have hereunto
13   set my hand and affixed my notarial seal this 8th of
14   December, A.D., 2006.

*Tamara Manganiello*
TAMARA MANGANIELLO, RPR
Illinois License No. 084-004560

Page 139

1        UNITED STATES DISTRICT COURT

2        FOR THE DISTRICT OF COLUMBIA

3

4  STEPHEN WOODRUFF,                )
                                    )
5           Plaintiff,              )
                                    )
6       -vs-                        )   No.  1:06-CV-00832(RJL)
                                    )
7  NATIONAL OPINION RESEARCH        )
   CENTER,                          )
8                                   )
            Defendant.              )

9

10          I hereby certify that I have read the foregoing transcript of my deposition given on November 16th, 2006, at the time and place

11  aforesaid, consisting of Pages 1 through 138, inclusive, and I do again subscribe and make an oath

12  that the same is a true, correct and complete transcript of my deposition so given as aforesaid.

13

14          please check one:

15          ✓   I have submitted errata sheet(s)
            ___ No corrections were noted

16

17  _____
            JOHN THOMPSON

18

19

20  SUBSCRIBED AND SWORN TO
    before me this  2  day
    of January, A.D. 2006.

21  _____

22  Notary Public

**OFFICIAL SEAL**
**MARILYN M FORD**
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/13/09

23

24