UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHEN WOODRUFF )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>NATIONAL OPINION RESEARCH )<br>CENTER )<br>)<br>Defendant. )<br>_____ ) | Case No. 1:06-CV-00832 (RJL) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Defendant National Opinion Research Center ("NORC" or "Defendant"), pursuant to Rules 7(h) and 56.1 of the Local Rules of the United States District Court for the District of Columbia, hereby submits this Statement of Material Facts Not in Dispute.

*Basis For Woodruff's Claims*

1.  Plaintiff Stephen Woodruff asserts that he believed he was to be employed for the length of NORC's National Immunization Survey contract. Pl. Dep. at 126; Complaint.

2.  Woodruff expected the National Immunization Survey contract to last for approximately five years. Pl. Dep. at 212.

*Woodruff Applies For Employment With NORC; The Employment Application States That Employment Is At-Will*

3.  In August of 2004, Woodruff, then a Mathematical Statistician for the United States Postal Service ("USPS"), attended the Joint Statistical Meetings of the American Statistical

Association ("JSM") in Toronto, Canada, where he spoke with several organizations about working for them. Pl. Dep. at 32, 36-37[1]; Exh. 4.

4.  At JSM, Woodruff submitted his resume to NORC and met with Rachel Harter, a Vice President of NORC in charge of the statistics and methodology department. Pl. Dep. at 36, 39-40; Exh. 2 at 6 (Harter Dep.).

5.  On August 13, 2004, Woodruff completed an NORC employment application. Exh. 4; Pl. Dep. at 40-41.

6.  Woodruff signed the application acknowledging the following statement:

    "I understand that employment is 'at-will' and either party may terminate the employment at any time."

Exh. 4 at 4; Pl. Dep. at 40-41.

*Woodruff Interviews At NORC's Offices*

7.  On or about November 1, 2004, the Centers for Disease Control awarded the National Immunization Survey project ("NIS") contract to NORC. Pl. Dep. at 126; Exh. 3 at 64, 68 (Thompson Dep.).

8.  After NORC won the NIS contract, many of Harter's staff "were being absorbed into the NIS project, and [she] didn't have people to support the other projects." Exh. 2 at 17-18, 64.

9.  NORC "went back to candidates [it] had interviewed at JSM to see [with whom it] wanted to follow up." Exh. 2 at 54.

10. In or about November 2004, Harter called Woodruff and invited him to interview at NORC's offices for possible employment as a statistician. Pl. Dep. at 44, 49-50; Exh.2 at 14.

---

[1] Excerpts from Plaintiff Stephen Woodruff's deposition are cited as "Pl. Dep. ___" and are attached hereto as Exhibit 1.

DC1 30187133.1

11.  Woodruff interviewed with various NORC personnel on December 10, 2004, including Harter and Kirk Wolter, a Senior Fellow at NORC. Pl. Dep. at 50, 59, 67; Exh. 3 at 26.

*<u>NORC Offers Woodruff Employment As a Statistician; The Offer Letter Specifically States That Employment Would Be At-Will</u>*

12.  On January 5 or 6, 2005, Yvonne Johnson, an NORC Human Resources representative, called Woodruff. Pl. Dep. at 52, 81.

13.  Johnson told Woodruff that NORC was extending him an offer of employment with a salary of $108,000 per year, and that NORC would be sending him a letter to sign and return. Pl. Dep. at 75.

14.  On January 10 or 11, 2005, NORC sent to Woodruff a written employment offer letter dated January 10, 2005 ("Offer Letter). Pl. Dep. at 92-93; Exh. 5.

15.  The Offer Letter offered Woodruff a position as a Senior Statistician II, and, as Woodruff has admitted, contained various terms that, were he to accept, he expected would be part of his employment with NORC (e.g., salary, paid time off, benefits). Exh. 5; Pl. Dep. at 98-100.

16.  The Offer Letter, without condition, informed Woodruff:

> While it is anticipated that your employment with NORC will be productive and mutually beneficial, it is important for you to understand that all NORC employees are 'at-will', which means that you or NORC may, for any reason or no reason, discontinue the employment relationship at any time.

Exh. 5.

17.  The Offer Letter instructed Woodruff to "call [NORC's Director of Human Resources] directly if you have any question about our offer." Exh. 5.

18.  The Offer Letter further stated: "To formally accept this offer of employment, please sign below and return it to" the Director of Human Resources. Exh. 5.

3

19. Woodruff admits that the Offer Letter does not say that he would be employed for the length of the NIS contract. Woodruff also admits that he did not make any notation on the letter to suggest that he should be employed for the length of the NIS contract. Pl. Dep. at 101.

20. Once Woodruff received the Offer Letter and read it, he did not tell anyone that he thought he was supposed to be employed for the length of the NIS contract. Pl. Dep. at 97, 101.

21. On January 11, 2006, Woodruff signed the Offer Letter stating: "I understand and accept the terms of this offer of employment. I understand that this offer provides no guarantee of continued employment . . . ." Exh. 5; Pl. Dep. at 93.

22. Woodruff then returned the signed Offer Letter to NORC. Pl. Dep. at 95.

*After Signing The Offer Letter, Woodruff Submits His Request For Retirement to the USPS*

23. On January 12, 2005, the day after signing the Offer Letter, Woodruff completed and signed his application for immediate retirement from the USPS. Pl. Dep. 21; Exh. 6.

24. Woodruff submitted the retirement form to USPS human resources on January 12 or 13, 2005, and it bears a USPS human resources date stamp of January 13, 2005. Pl. Dep. at 21, 23; Exh. 6.

25. After receiving the Offer Letter, Woodruff could have chosen to stay employed with USPS and not submitted the retirement form. Pl. Dep. at 108-109.

26. Even after having submitted the retirement form, Woodruff could have withdrawn his request for retirement. Pl. Dep. at 74-75.

*Woodruff's Employment With NORC And Termination*

27. Woodruff retired from the USPS effective February 23, 2005 and began working for NORC on February 28, 2005. Pl. Dep. at 15, 55.

4

28. Woodruff was terminated from NORC on June 16, 2005. Pl. Dep. at 113.

                                               Respectfully submitted,

                                               NATIONAL OPINION RESEARCH CENTER

                                               By: /s/ David M. Burns
                                                  David M. Burns, Esq. # 466167
                                                  Noah A. Finkel, Esq. (admitted *pro hac vice*)
                                                  SEYFARTH SHAW LLP
                                                  815 Connecticut Avenue, N.W., Suite 500
                                                  Washington, DC 20006-4004
                                                  (202) 463-2400
                                                  (202) 828-5393 (fax)

January 16, 2007                                  Attorneys for Defendant