UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEPHEN WOODRUFF | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:06-CV-00832(RJL) |
| | ) | |
| NATIONAL OPINION RESEARCH | ) | |
| CENTER | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Stephen Woodruff, ("Woodruff" or "Plaintiff"), pursuant to Local Rules 7(h)

and 56.1, hereby submits this memorandum of points and authorities in opposition to Defendant

National Opinion Research Center's (NORC)  Motion for Summary Judgment.  Defendant

verbally offered employment to Mr. Woodruff at an annual salary of $108,000 for a term

measured by the period NORC maintained its contract to work on the National Immunization

Survey (NIS) project. Mr. Woodruff accepted that offer of employment in a telephone call with

NORC's Human Resources Department.  NORC terminated Mr. Woodruff's employment before

NORC's NIS project was completed.  After NORC entered into its oral agreement with Mr.

Woodruff, NORC sent Plaintiff a letter on January 10, 2005, which specifically states in part that

the offer does not "constitute an employment contract, either expressed or implied."  Defendant's

own Human Resources representative, in a Rule 30(b) (6) deposition, admitted the January 10,

2005 letter was NOT a contract.  Prjmna Deposition at 51-52, 55.   In the face of the words of its

own letter to the contrary, Defendant seeks summary judgment on the ground that the letter

demonstrates unambiguously that Plaintiff's employment contract was "at will."    There is no

basis to grant summary judgment in light of the clear statement in the letter relied upon by

Defendant that the letter is **not** a contract.

<u>FACTUAL BACKGROUND</u>

**Woodruff's Interview & Subsequent Employment with NORC**

Plaintiff Woodruff is a highly respected and published mathematical statistician. Pl.

Complaint at 1.  Plaintiff was employed at the United States Postal Service (USPS) in late 2004,

where he had been employed for over seven years.  *Id.*  Plaintiff was in good standing and had no

compelling reason to leave his job.  *Id.*  In fact, upon learning of Plaintiff's plans to leave, the

USPS offered Plaintiff a small salary increase to stay.  Pl Dep. at 109.  In August of 2004,

plaintiff interviewed with NORC, along with two other companies, at the Joint Statistical

Meeting in Toronto, Canada.  *Id.* at 37-39.  In November of that year, Plaintiff was called by

Rachel Harter, Vice President of the Statistics and Methodology Department for Defendant,

NORC for interviews for a position in her department.  *Id.* at 49-51.  Plaintiff went to Chicago

for interviews with Defendant where he interviewed with Kirk Wolter, Senior Fellow at NORC

and Ms. Harter, among others.  *Id.*  Pl. Dep. Exhibit #3.

Plaintiff inquired of both Mr. Wolter and Ms. Harter the reasons why NORC needed to

hire and was told that NORC needed additional staff to meet staffing requirements imposed by

their recent acquisition of the NIS project.  Pl. Dep. at 58-60.  During his interviews, Plaintiff

made it abundantly clear that his retirement from the government and move to NORC was

contingent on NORC having sufficient work for him.  *Id.* at 69, 138.  Hence, Plaintiff inquired

specifically of Wolter and Harter about the expected duration of the NIS project and the duration

of NORC's need for his services to fulfill the additional staffing requirements. Pl. Dep. at 58-60,

68.  The sufficiency of the work was predicated on the NIS project and how long it lasted. *Id*

He was told that the NIS project was a solid project of five years duration and he could depend on the need for his services as part of the additional staffing services for the duration of the project. *Id.* at 61,112-113,130. Plaintiff made it clear that he was leaving his government job at the USPS based on their representation that he would be employed during the duration of the NIS project which was anticipated to be five years. *Id.* at 138.

Plaintiff returned to Washington, D.C. after the interviews and NORC corresponded with Plaintiff via phone and e-mail. Plaintiff had several phone calls from Ms. Harter discussing terms and keeping him apprised of the hiring process. Ms. Harter indicated that NORC would like to hire Plaintiff. *Id*. at 69-70. On January 5, 2005, HR representative, Yvonne Johnson called Plaintiff to further Ms. Harter's verbal offer of employment and relayed the salary amount of $108,000 and Plaintiff tentatively accepted this verbal offer. Pl. Dep. Exhibit # 6. During the morning of January 6, 2005, Plaintiff sent an e-mail with a couple of questions relating to the salary and benefits. *Id.* By the evening of January 6, 2005, Ms. Johnson was happy to announce to Ms Harter that plaintiff had accepted the verbal offer and that she had already confirmed a start date of February 28th, 2005 Pl. Dep. Exhibit # 7. Upon acceptance of the verbal offer, Mr. Woodruff accepted the oral contract of employment consisting of an annual salary of $108,000 as stated by Ms. Johnson in her phone call to Mr. Woodruff and the duration of employment measured by the term of NORC's contract to work on the NIS project. Pl. Dep. at 183, 185.

Subsequent to plaintiff's verbal acceptance and confirmation of his oral contract, Ms. Johnson sent an e-mail with an offer letter on January 10, 2005, Pl. Dep. Exhibit 9. The letter contained the clear and unequivocal statement that the offer letter did not constitute an employment contract expressed or implied. *Id.* Seeing that language, Plaintiff correctly determined that the letter did not change the terms of the oral contract he entered into on January

6, 2006 upon relaying acceptance of the offer to Ms. Johnson in a phone call.  Since, it was clear that the offer letter did not purport to be an employment contract, Plaintiff properly relied upon, as the contract terms, the representations of the two high level officials Mr. Wolter and Ms. Harter, assuring him employment for the duration of the NIS project, along with the phone call from Ms. Johnson stating the salary and describing fringe benefits as the employment agreement. *Id.* at 142-143.  At no time during the negotiation of the oral employment agreement or prior to Plaintiff's acceptance of Defendant's offer did any employee of NORC indicate that Plaintiff's employment was "at will" such that he could be terminated at any time for any reason.  *Id.* at 182, 188-189.  On the contrary, Defendant specifically represented to Plaintiff his employment would be for the term of the NIS project. Accordingly, Plaintiff correctly interpreted the reference in this letter to employment-at-will to be tied to the NIS contract, as previously discussed with officials Harter and Wolter.  *Id.* at 98-100.

Plaintiff retired from the USPS effective February 23, 2005 and began working at NORC's Washington D.C. office on February 28, 2005.  While at NORC, Plaintiff worked on the Residential Energy Consumption Survey (RECS) project, an airline passenger survey and several small projects.  He also worked on a few small emergency projects.  *Id.* at 110-111 Plaintiff was unexpectedly called into a meeting and terminated on June 16, 2005, three and one-half short months after being hired.  *Id.* at 113-118.

## ARGUMENT

Plaintiff's Complaint alleges four claims in this case:  Fraud (Count I), Negligent Misrepresentation (Count II), Breach of Contract (Count III), and Promissory Estoppel (Count IV).  Summary Judgment is appropriate only where the pleadings, depositions, admissions and affidavits, when construed in favor of the non-moving party, do not raise a genuine issue of

4

material fact for trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322(1986).  In determining a

motion for Summary Judgment, a court must consider all inferences from the record in the light

most favorable to the party opposing the motion.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

249 (1986*)*   The non-moving party is only required to show sufficient evidence supporting the

claimed factual dispute to require a jury or judge to resolve the parties' differing versions of the

truth at trial.  *Ross v Runyon,* 859 F. Supp 15, 21-22(DDC 1994)

I.     **The Letter Relied Upon By Defendant Does Not Change The Terms of the Enforceable Oral Agreement To Employ Plaintiff During The Term of the NIS Project.**

A.     **Oral Enforceable Agreement**

There is no merit to Defendant's argument that the January 10th letter was a contact for

at-will employment.  Defendant asks this Court to ignore the plain language of the letter which

states it is **not** a contract and the testimony of its own Human Resources expert who says the

letter is **not** a contract. Pryjma Dep. at 51-52, 55.   The letter, as it was not a contract, has no

binding effect on the parties and can not be "enforced," as an at-will employment contract as a

matter of law.

Furthermore the presumption of at-will employment under District of Columbia law can

not be said as a matter of law to control the outcome of this case.  The presumption of at-will

employment is a rebuttal presumption. *Hodge v. Evans Financial Corp.,* 707 F.2d 1566, 1569

(D.C. Cir. 1983); *Rinck v. Association of Reserve City Bankers*, 676 A.2d 12, 15 (D.C.  1996).

In both *Hodge* and *Rinck*, both courts of appeals reversed a trial court's grant of summary

judgment where there was evidence of an oral contract of employment, *Hodge*, 707 F.2d at 1569;

*Rinck*, 676 A.2d at 16. In *Rinck*, the evidence of the oral agreement was the employer's statement

that an employee would not lose her job, as a result of a merger was sufficiently clear and

unambiguous to overcome the presumption. 676 A.2d at 16.  In *Hodge*, the evidence of the oral agreement consisted of the employer's promise that the employee would be terminated only if the company went out of business, went bankrupt or the president of the company performed all of the employee's functions.  707 F.2d at 1568.

Here the evidence which overcomes the burden is more substantial than the evidence of oral statements upon which the *Hodge* and *Rinck* courts relied upon to find that the resolution was a matter for a jury.  The evidence here consists of NORC's agreement to all the material terms of an enforceable oral agreement to employ Plaintiff for the duration of the NIS project, at a specific salary with a specific commencement date. In order to have an enforceable contract and not at-will employment there must be (1) agreement as to all material terms; and (2) intention of the parties to be bound.  *Georgetown Entertainment Corp v. District of Columbia* 496 A.2d 587, 590 (D.C. 1985)  The law further indicates that parties can enter into enforceable oral contracts as long as they agree to all material terms and intend to be bound by their oral agreement,  *Edmund J. Flynn Co. v LaVay,*  431 A.2d 543, 547 (D.C. 1981). The material terms of the oral contract are: (1) the term measured by the length of the NIS contract stated by Ms. Harter and Mr. Wolter; (2) the amount of salary stated by Ms. Johnson on January 6, 2005.  As set forth above, Plaintiff and Defendant had agreed to all the material terms in the course of several conversations.  Ms. Johnson called to provide information regarding salary and fringe benefits.   The terms of employment were comprised of these verbal representations made by Ms. Harter and Mr. Wolter along with the oral representations made by Ms. Johnson.  When Plaintiff accepted orally on January 6, 2005, he had an oral agreement for employment with Defendant, NORC for the term of NIS project. The enforceable oral agreement of employment was formed when NORC had offered all material terms and Plaintiff accepted them over the

phone on January 6, 2005.  Pl Dep. Exhibit #7.  That oral agreement is evidence from which a jury could clearly rely upon to overcome the at-will presumption.

The case law relied upon by Defendant is readily distinguishable from the facts in this case.  In *Willoughby v. Potomac Electric Power Co.,* 100 F.3d. 999 (D.C. Cir. 1996).  A PEPCO employee was fired and challenged his discharge from an alleged permanent employment contract. The employee relied primarily on the language of the company's personnel manual which the Court found did not contain a promise of permanent employment. 100 F.3d at 1001. While the Court refers to an oral promise of permanent employment made by PEPCO's chief draftsman, nowhere in the case does the Court identified the specific language of the alleged promise. *Id.*  The evidence of the oral promise was the employer's off-hand comment during a promotion review (6 years prior) as an oral contract.  *Id.* Here the representations were made to Mr. Woodruff during his interviews for employment, were made in response to his specific inquiry concerning the duration of employment and the oral agreement covering all the terms was confirmed by Mr. Woodruff on January 6, 2005 in a telephone call with Ms. Johnson. Accordingly, *Willoughby* is inapposite to this case.

Defendant's other cases are also not authority supporting the entry of Summary Judgment in this case. *Daisley v. Riggs Bank* 372 F. Supp. 2d 61 (D.D.C. 2005); *Minihan v. American Pharmaceutical Ass'n,* 812 F.2d 726 (D.C. Cir 1987).  In each of the foregoing cases, the Court found the writing was unambiguously a contract. *Daisley*, 372 F. Supp.2d at 69; Minihan *v. American Pharmaceutical Ass'n,* 812 F.2d at 728.   Furthermore, in *Minihan*, both parties agreed that the employment contract consisted of an offer letter and the American Pharmaceutical Association's handbook.  *Minihan* at 726.

Here the opposite is true. The January 6th letter states it is not a contract and Defendant's own Rule 30(b) (6) witnesses testified that the letter is not a contract. At best the letter relied upon by Defendant is ambiguous. For that reason, the construction of the letter can not be determined as a matter of law and is for a jury to determine. *Accord*, *Hodge, 707* F.2d at 1568-69. Given the ambiguity regarding the January 10th letter, which on its face states that it is not a contract, yet Defendant contends that it is a contract, the issue of interpreting when Plaintiff and Defendant had entered into a contract and the terms of such employment contract are an issue for the jury.

Further, a written contract memorializing the terms of the oral contract was never contemplated here. The oral contract terms were offered and accepted on January 6th, 2005. The letter came on January 10th, 2005. Defendant's reliance on *Shankur v. ACS-GSI*, 2006 WL 1073073, 2006 U.S. Dist. LEXIS 22390. (D.D.C. 2006) is clearly misplaced. Plaintiff Shankur was aware that all employment terms would be set forth in a written offer letter and that "verbal discussions regarding terms or conditions of employment by Company representatives are not binding", as the application for employment stated that up front. 2006 U.S. Dist. LEXIS 22390 at *10. Here, while Ms. Johnson mentioned to Mr. Woodruff that a letter would be coming, it was clear Plaintiff accepted the offer prior to receiving the letter. Moreover, NORC can not claim that the parties contemplated a written contract because the January 6th letter states in no uncertain terms it is **not** a contract.

### B. Plaintiff's Claim is not barred by the Statute of Frauds

There is also no merit to Defendant's argument that the statute of frauds bars the admission of evidence to establish an oral contract. Defendant contends that discovery has clarified Plaintiff's position that he expected to be employed five years. That is simply not the case. The only statement the Defendant has made is that the contract term would be

conterminous with the NIS project which was expected to last five years. Pl Dep. at 61, 66-69.

Defendant never stated he was offered a five year contract.  Simply because there was an

expectation the NIS project might last five years, does not change the fact NORC could have

been terminated from the NIS project in less than one year after hiring Plaintiff. Courts have held

that if an agreement is capable, possible, or susceptible of performance within one year, the

statute of frauds does not apply and an oral agreement may suffice.  *Rink v. Association of*

*Reserve City Banke*rs, 676 A. 2d 12 (D.C. 1996) citing *Launay v Launay Inc.* 497 A. 2d 443

(1985); Mr. Woodruff's employment contract could have been performed in less than one year if

the NIS was terminated in less than one year. For this reason, the statute is inapplicable.  *Accord*

*Snyder v. Hillegeist*, 246 F.2d 649, 651 (D.C. Cir.  1957) *Launay v Launay Inc.* 497 A. 2d 443

(1985).  Although Plaintiff believes he had an oral contract for a duration of approximately five

years, the employment contract was capable of performance within a year.  Plaintiff could have

performed and received the stated annual salary and benefits within a year.  The agreement is

therefore not deficient under the statute of frauds.

For these reasons, NORC's reliance on *Brown v. News World Communications, Inc.*,

1990 WL 137378 (D.D.C.  1990) is misplaced. There the Plaintiff alleged specifically a two year

employment contract.  Unlike *Brown,* the Complaint clearly alleges Mr. Woodruff's employment

contract is not a contract for definite term of years but conditional on the ongoing NIS contract.

The claims before this Court are analogous to those in *Snyder* where the Court of Appeals for the

District of Columbia Circuit reversed a trial court which dismissed an action to enforce an oral

contract for a real estate commission.  246 F.2d at 651.  The District of Columbia Circuit found

the statute was inapplicable because the sale of building, for which Plaintiff was entitled to

commission under the alleged contract, could have occurred in less than one year, although it

was not. *Snyder v. Hillegeist*, (D.C. Cir. 1957). The same is true here, the NIS contract could have been terminated in a year and thereby causing Mr. Woodruff's contract to terminate within one year.

A further reason the statute is inapplicable is because the "partial performance" exception to the application of the statute of fraud applies. The statute does not apply where there has been partial performance where one or both of the parties to the oral agreement have partially performed pursuant to the contract. *Fitzgerald v. Hunter Concessions, Inc.*, 710 A.2d 863, 865 (D.C. 1998); *see*. In *Fitzgerald*, the Plaintiff alleged a five year oral contract to assist the Plaintiff in connection with a contract the Plaintiff had with a third party, the Smithsonian Institute, to set up a Carousel. *Id*. at 864. Leaving aside the issue of whether the contract was one that could not be formed within a year,[1] the Court denied the motion to dismiss on the ground that Defendant's payments to Plaintiff pursuant to the contract for five years constituted partial performance and therefore the statute could not be applied. *Id*. at 865. In an analogous circumstance the District of Columbia Court of Appeals ruled the statute of frauds did block the enforcement of real contract where the Plaintiff would suffer substantial hardship and unjust injury in the form of expenditure of attorney's fees and architectural services Defendant made in reliance on the contract. *Landow v. Georgetown-Inland West Corp*., 454 A.2d 310, 314 (D.C. 1982). The exception to the statute also applies here. NORC paid Mr. Woodruff for four months in conformance with the employment contract after he left his employment at the U.S. Postal Service in reliance on the contract.

---

[1] As was the case with Mr. Woodruff's contract, the contract of Plaintiff in *Fitzgerald* was co-extensive with the Defendant's contract with the Smithsonian. The District of Columbia Court of Appeals questioned the plaintiff's decision "to concede" the contract was within the one year limitation of the statute. *Fitzgerald*, 710 A.2d at 865n 4. The Court specifically cited *Hodge* and *Lunay* in questioning the "providence" of conceding that the contract was one that could not be performed in one year. *Id*. As set forth above, these cases support the proposition that such a contract could be performed in one year and plaintiff's counsel in *Fitzgerald* erred in conceding the applicability of the statute.

## II.    Plaintiff's Promissory Estoppel Claim is Sufficient.

Defendant's contention that Plaintiff's Promissory Estoppel claim fails is patently wrong. Defendant has not established an express enforceable contract nor has he shown that Plaintiff's reliance was not reasonable.  Defendant relies heavily on the case *Daisley* case to support these contentions. However,  *Daisley* simply stands for the proposition that a claim for promissory estoppel will not stand where there is an express enforceable contract. *Daisley,*  372 F. Supp. 2d at  71. In *Daisley*, it is clear that the subsequent writing or offer letter is an enforceable contract of at-will employment.  However, that is not the case here.  The January 6th letter states it is **not** a contract. It clearly can not be said as a matter of law that the January 6th letter is a binding enforceable contract especially in light of the testimony of Defendant's HR representative to the contrary.  Pryjma Dep. at 55.

Defendant's statements that Plaintiff could not have reasonably relied on the promises from NORC officials are also wrong.  Mr. Woodruff specifically inquired of Mr. Wolter and Ms. Harter regarding the  duration of his employment with NORC.  In response to that specific inquiry, both Wolter and Harter stated Mr. Woodruff's services would be needed during the term of the NIS project to fill additional staffing needs. It was reasonable for Plaintiff to rely on those representations, especially since he accepted employment orally over the telephone with Ms. Johnson before he ever received the January 6th letter. Furthermore the letter, as it was worded, did not give reason to believe he could not rely on their representations.  Rather, under the circumstances, Plaintiff's reasoning was actually quite sound.  The offer letter states on its face that it is not a contract.  Rightfully so, Plaintiff did not view the letter as a contract, nor did he intend to be bound by signing the offer letter.  Any lay person reading the offer letter stating that it is not a contract would believe that the letter is not their employment contract.  Accordingly,

Defendant properly relied upon the express representations that he would be employed for the term of the NIS project and the oral acceptance of Ms. Johnson's offer on January 6th, as the creation of the contract of employment.

### III.    Plaintiff's Fraud Claim Is Sound.

### A.  Plaintiff had no Written Contract.

Defendant's claims that plaintiff cannot sustain a claim for fraud due to the employment contract is specious.  Again, Defendant's claim is premised upon the fact that the offer letter is a contract for at-will employment.  As previously discussed, Defendant cannot now claim that the letter is a contract, when it clearly states on the face of the document that the letter is not a contract and its own Rule 30(b)(6) witness confirmed that it was  not a contract.  Defendant further relies on the case of *Tonn v. Philco Corp*., where the Court acknowledged the terms of the written contract.  241 A.2d 442 (D.C. 1968).  The facts here can be distinguished from *Tonn.* Most important is the fact that there was no written contract in the instant case, as the subsequent writing, the January 6th letter, is not a contract.

### B.  Plaintiff Can Establish the Elements of His Fraud Claim.

Defendant's assertion that Plaintiff cannot establish certain common law elements of fraud is again patently wrong.  Plaintiff can establish all elements.   Ms. Harter and Mr. Wolter made the misrepresentation to Mr. Woodruff that his employment would be coterminous with the NIS project.  In fact the company terminated him while the NIS project continued at NORC. These statements were made in reference to a material fact, the length of Plaintiff's employment with NORC.

There is no merit to Defendant's assertion that Plaintiff admitted the absence of proof as to Defendant's attempt to deceive. Without question, Plaintiff testified that he did not know for

sure whether Mr. Wolter or Ms. Harter knew the statements were false and intended to deceive him.  Pl. Dep. at 132-133 Plaintiff answers honestly, he cannot know for sure.

However, the material inquiry is whether there is evidence of NORC's intent to deceive. Mr. Woodruff testified to such.  He testified to several pieces of evidence that NORC intended to deceive him and had no intention of fulfilling its representation that he would have employment through the term of the NIS project.  One such piece of evidence was the fact that NORC  hired him with only two months of fulltime work for him and did not disclose this to him. Plaintiff Dep at 137; Harter dep. at 15-16.  Additional evidence of Defendant's intent to deceive was that Ms. Harter, concealed from Mr. Woodruff that she had had serious doubts about his abilities at the time she interviewed Mr. Woodruff.  Pl. Dep. at 188-89; Harter's Dep. at 47-48.  Ms. Harter concealed her beliefs as to his abilities despite the fact that Mr. Woodruff made it clear that he did not want to leave his current employment without a substantial commitment from NORC. Pl. Dep. 69, 138; Harter Dep. at 48-49.  Clearly, in light of Mr. Woodruff's specific inquiry, Ms. Harter had a "duty to speak" and disclose her uncertainty about his ability. *Accord*, *Andolsun v Berlitz Schools of Languages of America, Inc.*, 197 A.2d 926, 927 (D.C. 1964). In A*ndolsun*, the Plaintiff, an alien, was hired by Berlitz to translate for the Army. 197 A.2d at 926. During the job interview, Plaintiff informed Berlitz that he "was hesitant about leaving a position he had held for twelve years and taking a new position if his alien status might prevent him from retaining the new position" on a permanent basis. *Id.* at 927. Since Plaintiff had made this known, Defendant was under a duty to make a full disclosure. Berlitz failed to disclose to the plaintiff that the Army wanted Berlitz to replace aliens within one year. *Id.* The same duty to speak compelled Ms. Harter to disclose her concerns with his abilities because Mr. Woodruff explicitly disclosed that his decision to leave the USPS was dependent on a substantial basis for a

13

commitment from NORC.  It was fraudulent for Defendant to induce Mr. Woodruff to leave the

USPS by representing he would be employed during the term of the NORC contract and at the

same time conceal the misgiving about his abilities. As the Andolsun Court reasoned:

"concealment or suppression of a material fact was as fraudulent as a positive direct

misrepresentation." *Id.*  Clearly a jury could find the representations to Mr. Woodruff by Ms.

Harter and Mr. Wolter regarding the length of employment were made with the intention to

deceive in light of the fact that NORC did not have much work for him and that it had serious

doubts regarding his abilities.

Further evidence of Defendant's fraudulent conduct is the false reasons given to Mr.

Woodruff for his termination.  Mr. Woodruff was told he was being terminated due to business

downturns involving the NIS and Qatar projects.  Harter Dep at 82-83 and Pl. Dep. at 113-118.

That statement was false. The fact is $2 million dollars in funds out of a $60 million contract

were delayed for expenditure by the government for a few months. Thompson Dep. at 94-95, 82-

83.   As of September 2005, NORC had an additional $800,000 work for which Mr. Woodruff

was qualified to perform. *Id.* at 122-23. By December 2005, NORC actually had 24 million

dollars of funded additional work than it had when it hired Mr. Woodruff. *Id.* at 84-85.

Furthermore, NORC did not terminate any persons that were working on the Qatar contract as a

result of the temporary delay in executing successive task orders. Coelen Dep. at  51-52.

Plaintiff has sufficient evidence for this issue to survive Summary Judgment and to allow the

question of intent to become an issue for the jury to decide.

Finally, the issue of reasonableness has been address previously but merits further

discussion here.  Defendant's insistence that Plaintiff's reliance on these assurances was not

reasonable is untrue.  Defendant cites *Washington v. Thurgood Marshall Academy*, 2006 WL

1722332, Case NO. 03-2570-CKK (D.D.C. June 19, 2006), where the court stated, "Plaintiff seeks to rely on informal comments made during a five minute interview in preference to the contrary text of a written contract."   The facts of the instant case are distinguishable.  The representations were made to Plaintiff by two different officials and were not made informally. Plaintiff made it clear that this issue would be the basis for his retirement from the government and for his decision to come to NORC, during employment negotiations.  Lastly, the letter is not a contract and therefore did not as a matter of law make Mr. Woodruff  unreasonable in relying on the oral representations.  Consequently, Plaintiff had no reason to believe otherwise.

### IV.    Plaintiff Reasonably Relied on Defendant's Negligent Misrepresentation.

Defendant's final argument that Plaintiff's negligent misrepresentation claim fails, is defective.  As with Plaintiff's fraud claims, Plaintiff can prove the elements of its negligent misrepresentation claim.  First there is a false statement that there was a duty to disclose. Knowing that Mr. Woodruff was retiring from a very secure job, and that he indicated that this retirement and move to NORC was predicated on NORC having sufficient work such that he could expect to work a substantial period, NORC employees had a duty to disclose to Plaintiff that it was unsure about his abilities and did not have substantial work for him.  *Accord Andolsun v Berlitz Schools of Languages of America, Inc.*, 197 A.2d 926.

## Conclusion

Based on the foregoing, Stephen Woodruff respectfully requests that this Court not grant

Summary Judgment and schedule this case for trial.


Respectfully submitted

STEPHEN WOODRUFF

By: /s/  Nicholas H. Hantzes

Nicholas H. Hantzes, Esq.
# 361450
HANTZES & REITER
1608 Spring Hill Road
Suite 420
Vienna, VA 22182
703 378 5000
571 633 0203 (fax)
Counsel for Plaintiff