**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STEPHEN WOODRUFF )<br>)<br>      Plaintiff )<br>)<br>v. )<br>)<br>NATIONAL OPINION RESEARCH )<br>CENTER )<br>)<br>      Defendant. ) | Case No. 1:06-CV-00832 (RJL) |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant National Opinion Research Center ("NORC" or "Defendant") hereby submits this Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

The facts of this case are quite simple, and Woodruff does not actually dispute any of NORC's "Statement of Material Facts Not in Dispute." Those he does purport to dispute are not in dispute at all. Indeed, all of the facts that Woodruff purports to dispute are supported only by his deposition testimony and/or documents he verified that he signed. Thus, he cannot credibly claim that these facts are in dispute. Additionally, in responding to certain facts as "disputed," Woodruff does not identify how they are in dispute. Rather, he simply argues that the alleged facts are not material or do not state all purported material facts. *See, e.g.,* Plaintiff's Statement of Disputed Material Facts ¶¶ 6, 13. Thus, there are no material facts in dispute.

Regarding application of the law to the facts, the cases cited by NORC in its Motion for Summary Judgment are nearly on all fours with the facts and issues before this Court. As these cases doom his claims, Woodruff all but ignores them. Woodruff's own testimony combined with the applicable case law makes clear that none of his claims can survive summary judgment.

**ARGUMENT**

**I. BREACH OF CONTRACT CLAIM**

In response to NORC's argument that the breach of contract claim fails, Woodruff essentially argues that the Court's analysis should end with Yvonne Johnson's telephone call to him extending an oral employment offer on January 5, 2005, his purported oral acceptance on January 6, 2005, and his subjective belief that his employment with NORC would last for the length of the National Immunization Survey ("NIS") project based on the alleged oral representations by Rachel Harter and Kirk Wolter prior to NORC extending an offer of employment to him. Woodruff would have the Court wholly ignore the January 10, 2005 written offer letter ("Offer Letter") that unequivocally informed him that his employment with NORC would be at-will, that in no way mentioned the NIS project or that his employment would last for the length of the NIS project, and that Woodruff signed without modification. To ignore the Offer Letter would be to ignore both the facts and applicable law. As Woodruff testified in his deposition:

> Q. [By NORC Counsel]: And did there come a time when NORC extended an offer of employment to you?
>
> A. [By Woodruff]: Yes. Yvonne Johnson called.
> . . .
> Q. Okay. And what precisely did she say?
>
> A. She said I'm extending you an offer of employment to start working with us for a salary of, I believe, $108,000 a year *and we will be sending a letter for you to sign and return.*
>
> Q. Did she say anything else?
>
> A. That's about it.
> . . .
> Q. Is this phrase, verbal offer [in the Offer Letter], referring to the offer made by Yvonne Johnson to you on the phone?

2

>  A.  Well, it certainly -- that's probably the only official offer that I got over the telephone.
>  . . .
>  Q.  Do you remember Ms. Harter ever specifically telling you you had, in fact, been selected and would be offered employment prior to [January 6, 2005]?
>
>  A.  No, I don't remember.

Pl. Dep. at 75, 90, 96-97 (emphasis added) (attached at Exhibit 1).

Thus, the only person to extend an oral offer to Woodruff was Johnson, and the only two things that Johnson conveyed in her telephone conversation with Woodruff were the salary at which he would be paid and that the Offer Letter would be forthcoming which he would have to sign.  As set forth in more detail in the Motion, Woodruff reviewed and unconditionally signed the Offer Letter.  Further, he testified that the Offer Letter contained terms of employment beyond his salary that he expected would be part of his employment, such as paid time off and benefits.  *See* Motion at 4 and record citations.  Woodruff unconditionally signed the Offer Letter, acknowledging: "I understand and accept the terms of this offer of employment."  *See* Motion at 4-5.  He cannot now selectively pick and choose among the terms of the Offer Letter that he likes on the one hand, and, then, on the other, disclaim acceptance of the terms that undermine his case.

As a matter of law, Woodruff's employment contract with NORC was for at-will employment.  Indeed, in its Motion, NORC cited cases from this Court holding that there is a presumption that employment is at-will and that that the plaintiff's employment in those cases was determined to be at-will where a written offer letter or other document indicated that employment would be at-will despite alleged oral representations to the contrary.  *See* Motion at 6-11 (e.g., *Daisley* and *Minihan*).  These cases are dispositive of Plaintiff's claim, and,

understandably then, he does not address them in detail in his Opposition.[1]  Rather, Plaintiff's mantra is that the Offer Letter could not have been a contract because it says it does not constitute a contract.[2]  However, this does not square with the settled law in the District of Columbia that all employment, even at-will employment, is contractual.  Thus, regardless of what the Offer Letter said (not to mention that it said it was an "offer," and that it contained the "terms" of his employment were he to "accept"), Woodruff's employment with NORC was contractual.  The only question then is whether it was a contract of employment for some sort of duration or a contract of at-will employment.  Based on the undisputed facts and the applicable law, there can be no question but that Woodruff's employment with NORC was a contract of at-will employment.

The Court must start with the presumption that Woodruff's employment was at-will. Woodruff apparently realizes that this presumption against the backdrop of the Offer Letter's unambiguous language that his employment would be at-will undercuts his claim.  Indeed, Woodruff reverts to arguing in his Opposition that he alone "interpreted" the Offer Letter's at-will language to mean his employment would last for the length of the NIS project.  *See* Opposition at 4.  Yet, contrary to Woodruff's subjective interpretation, the Offer Letter made clear that his employment would be "at-will," that either he or NORC could, "for any reason or

---

[1] Moreover, Woodruff summarily references two cases as support for his breach of contract claim: *Hodge v. Evans*, 707 F.2d 1566 (D.C. Cir. 1983) and *Rinck v. Association of Reserve City Bankers*, 676 A.2d 12 (D.C. 1996).  However, these cases only recognize the proposition that oral promises may create an employment contract that is not at-will.  In neither of these was there any sort of written offer letter or document provided to the plaintiff employee indicating that the employment would be at-will.

[2] Woodruff also repeatedly states that NORC's human resources representative testified in deposition that the Offer Letter is not a contract.  *See*, *e.g.,* Opposition at 5.  Of course, whether something constitutes a contract is ultimately a legal conclusion for the Court, and, as such, NORC objected to Woodruff's deposition questions asking NORC's human resources representative whether or not the Offer Letter constituted a contract.

4

no reason, discontinue the employment relationship at any time," and that NORC was providing "no guarantee of continued employment." *See* Exh. 5 attached to Motion. Nowhere did the Offer Letter reference the NIS project or indicate that the offer of at-will employment and NORC's ability to terminate his employment was somehow constrained by the NIS project. Thus, at its base, Woodruff's claim rests solely upon his subjective belief that his employment was not at-will and was to be for the length of the NIS project. However, the at-will presumption may only be rebutted by "evidence of clear contractual intent on the part of both the employer and the employee" to the contrary, *Daisley v. Riggs Bank*, 372 F. Supp.2d 61, 68 (D.D.C. 2005), and a plaintiff's "testimony concerning how he alone interpreted the terms of his employment" is "patently irrelevant" and does not create "a material issue as to whether he and [the defendant] *together* agreed to lifetime employment." *Minihan v. American Pharmaceutical Ass'n*, 812 F.2d 726, 728 (D.C. Cir. 1987). Accordingly, Woodruff's employment contract with NORC was for employment at-will, and his breach of contract claim should be dismissed.[3]

## II. PROMISSORY ESTOPPEL CLAIM

As set forth in detail in NORC's Motion and above, Plaintiff had a contract for employment at-will with NORC as embodied in the written Offer Letter. As such, Plaintiff's protestations to the contrary in his Opposition are unavailing, and the existence of his at-will employment contract bars his promissory estoppel claim. *See* Motion at 12-13.

---

[3] In response to NORC's argument that the breach of contract claim is also barred by the Statute of Frauds, Woodruff responds that the Statute of Frauds is inapplicable because his employment was capable of being performed within one year and that there had been partial performance. Woodruff, however, claims that he expected to be employed for five years and he seeks damages for a five year period. As such, the Statute of Frauds should apply. Moreover, "[g]enerally, part performance of an employment contract will *not* remove it from within the statute [of frauds]." *O'Rourke v. Audio Stats Educ. Servs., Inc.*, 1989 WL 43956, No. 85-2768, (D.D.C. Apr. 18, 1989) (emphasis added).

Moreover, Woodruff's promissory estoppel claim is also barred because any purported reliance on the alleged representations of Harter was not reasonable. The Offer Letter unequivocally informed Woodruff that his employment with NORC would be at-will and could be terminated for any reason. This is completely at odds with Harter's alleged representation that Woodruff would be employed for the length of the NIS project, and, therefore, Woodruff's reliance on Harter's representation could not have been reasonable.

## III.     FRAUD CLAIM

Once again, the applicable case law is dispositive of Woodruff's fraud claim. As with the plaintiff in *Tonn v. Philco Corp.*, 241 A.2d 442 (D.C. 1968), Woodruff had a contract for employment at-will. This bars his fraud claim. To hold otherwise as Woodruff argues would be to ignore and make meaningless the written Offer Letter that Plaintiff reviewed and unconditionally signed and accepted.

Woodruff's fraud claim also fails because he cannot establish the common law elements of fraud. In his opposition, Woodruff asserts that the alleged oral representation that he would be employed for the length of the NIS project was made with the intent to deceive him because NORC allegedly concealed that it "hired him with only two months of fulltime work" and that Ms. Harter "had serious doubts about his abilities at the time she interviewed him." Opposition at 13. In the first instance, this does not go to the element of whether Harter had knowledge that the alleged representation that he would be employed for the length of the NIS project was false (and, indeed, Woodruff admitted that he does not know whether Harter knew this was a false statement). Even so, these alleged omissions that Woodruff attributes to Harter (and which he bases solely on Harter's deposition testimony) are taken out of context and are not supported by the record facts. Rather, Harter testified that with respect to one particular project, the RECS

6

project: she expected that Woodruff would have "full-time" work on RECS for "a couple months"; that he would then cut back to "half-time" on RECS; that she estimated that there was work available for him to do on RECS for about one and one-half years; that she was not sure what projects he would later work on, but that she needed to have her staff support many projects, not just RECS; and that she does not have a lot of lead time on projects her department needs to support, so she often does not know what people will be working on a few months out. Harter Dep. at 15-17, 22-23 (attached at Exhibit 2). Certainly, this does not mean that Harter expected that there would be only two months of work for Woodruff as Woodruff has tried to imply. Further, Ms. Harter testified that when she was interviewing Woodruff, she thought he would be able to do the job for which she was interviewing him. Harter Dep. at 111-112. Thus, the statements that Woodruff attempts to attribute to Harter do not evidence an intent to deceive or knowledge of falsity of the purported representation that he would be employed for the length of the NIS project, nor are they supported by the record.

Further, as with the promissory estoppel claim, Woodruff could not have reasonably relied upon the alleged false representation by Harter in light of the subsequent Offer Letter. Accordingly, Woodruff's fraud claim should be dismissed for the additional reason that he cannot establish three of the elements of his common law fraud claim.

**IV.     NEGLIGENT MISREPRESENTATION CLAIM**

As with Woodruff's fraud claim, as discussed in more detail in the Motion and above, Woodruff's negligent misrepresentation claim fails. He could not have reasonably relied on the alleged misrepresentations as they were in direct conflict with the subsequent written Offer Letter.

7

## **CONCLUSION**

For all of the foregoing reasons and those set forth in the Motion for Summary Judgment, Defendant NORC respectfully requests that the Court enter summary judgment in its favor and dismiss Woodruff's claims with prejudice.

                                      Respectfully submitted,

                                      NATIONAL OPINION RESEARCH CENTER

                                      By: /s/ David M. Burns
                                            David M. Burns, Esq. # 466167
                                            Noah A. Finkel, Esq. (admitted *pro hac vice*)
                                            SEYFARTH SHAW LLP
                                            815 Connecticut Avenue, N.W., Suite 500
                                            Washington, DC 20006-4004
                                            (202) 463-2400
                                            (202) 828-5393 (fax)

February 9, 2007                           Attorneys for Defendant

DC1 30189062.1