```
 1                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2
 3   - - - - - - - - - - - - - - -x
     STEPHEN WOODRUFF,             :
 4
             Plaintiff,            :
 5
        v.                         : Case No.: 1:06-CV-00832(RLJ)
 6
     NATIONAL OPINION RESEARCH     :
 7   CENTER,
                                   :
 8
             Defendant.            :
 9   - - - - - - - - - - - - - - -x
                                       Tuesday, November 28, 2006
10
                                       Washington, D.C.
11
     Deposition of
12
                        STEPHEN WOODRUFF
13
     plaintiff, called for examination by counsel for the
14
     defendant, pursuant to notice, at the offices of David Burns,
15
     Esquire, 815 Connecticut Avenue, N.W., Suite 500, Washington,
16
     D.C. 20006, beginning at 10:00 a.m., before Sharon
17
     Mitrothanasis a notary public in and for the State of
18
     Maryland, when were present on behalf of the respective
19
     parties:
20
21
22
23
24
25
```

1   A   It's possible. When I signed the -- I do not
2  remember though when I signed the 2801 I was pretty sure
3  that I couldn't withdraw it. I was thinking of that at the
4  time although I was probably wrong that that was going to
5  finalize things so I put some thought into it.
6   Q   All right. And did there come a time when NORC
7  extended an offer of employment to you?
8   A   Yes. Yvonne Johnson called. It was probably the
9  week before the 10th of January and made me an offer over
10 the telephone and specified a sum because we really hadn't
11 talked about money.
12  Q   Okay. And what precisely did she say?
13  A   She said I'm extending you an offer of employment
14 to start working with us for a salary of, I believe,
15 $108,000 a year and we will be sending a letter for you to
16 sign and return.
17  Q   Did she say anything else?
18  A   That's about it. It was a very short telephone
19 call and I had been expecting it since Rachel had already
20 told me it was coming.
21  Q   And what was your response to her?
22  A   Yes.
23  Q   Was it an affirmative yes or a tentative yes?
24  A   No, it was an affirmative yes. An affirmative
25 yes.

90

```
 1      Q    Okay.  But, you would agree that the date of that
 2  is January 5, 2005.
 3      A    Yes.
 4      Q    All right.  And then when we look at the second
 5  page of this exhibit, so you can look at the page, and we're
 6  going to go back to that bottom e-mail and this is the e-
 7  mail we're looking at from you to Ms. Johnson, right, and
 8  that's dated January 6th --
 9      A    Yes.
10      Q    -- at 7:30 a.m.  So, based on these two e-mails
11  would it be fair to say that the phone call you received
12  from Ms. Johnson that we discussed in which she conveyed the
13  offer was sometime at least on or before January 5th,
14  perhaps January 5th?
15      A    It's possible.  It's also possible that Rachel
16  said I would probably be or told me that I was going to be
17  selected and they just tried to go through personnel to
18  formalize it so, in effect, it already had been but it just
19  hadn't been finalized and so the dates can be a little --
20  it's hard to say at this point.
21      Q    Do you remember Ms. Harter ever specifically
22  telling you you had, in fact, been selected and would be
23  offered employment prior to these dates in this exhibit?
24      A    No, I don't remember.
25      Q    Okay.  Let's look at Woodruff Exhibit No. 7.  You
```

1   Q   All right. All right. So, look at the first line
2   at the very top. It's got a date of January 11, 2005. And
3   a time of 12:49.
4   A   Uh-hmm.
5   Q   And then some, then word I fax and then some
6   letters and numbers and then the phrase, the symbol @
7   NORC.org. Is this possibly either the fax or the attachment
8   that you received sent like that and then the next fax tag
9   line has same date of January 11, 2005 with a time of 14:41
10  so that would be 2:41 p.m. And that's the one that
11  referenced financial statistical programs.
12          So, does that refresh your recollection, Mr.
13  Woodruff whether you faxed these letters back to NORC?
14  A   It appears that I did, but, I don't know. I
15  wouldn't say for sure.
16  Q   Okay. All right. And then if you look at Exhibit
17  9, if we look on the first page, the first paragraph, the
18  first sentence. So, after it says Dear Stephen, it says in
19  part, quote, this letter is to confirm the verbal offer
20  extended to you for the position of Senior Statistician II,
21  end quote.
22          Do you see that?
23  A   Yes.
24  Q   Okay. Is this phrase, verbal offer, referring to
25  the offer made by Yvonne Johnson to you on the phone?

1    A    Well, it certainly -- that's probably the only
2  official offer that I got over the telephone.
3    Q    So, that phrase, verbal offer in this Exhibit 9 is
4  referring to Ms. Johnson's official offer?
5    A    Yes.  She -- she -- yeah, that's the way I would
6  read this and then I'm sure the way I read it at the time.
7    Q    Okay.  Now, when you signed the letter on the
8  second page of Exhibit 9 you signed saying that you
9  understood the terms of this offer of employment, is that
10 correct?
11        MR. HANTZES:  Objection.  The document speaks for
12 itself.
13        MR. BURNS:  You can answer.
14        THE WITNESS:  Yes.
15        BY MR. BURNS:
16   Q    Okay.  And if you turn back to the first page, and
17 I apologize for flipping back and forth, but, apparently
18 sometimes if you look at the paragraph at the very bottom,
19 why don't you go ahead and read that out loud for us.
20   Q    While it is anticipated that your employment
21 relations with NORC will be  productive and mutually
22 beneficial, it is important for you to understand that all
23 NORC employees are at will which means that you are -- that
24 you or NORC may for any reason or no reason discontinue the
25 employment relationship at any time.

CERTIFICATE OF COURT REPORTER - NOTARY PUBLIC

I, Sharon Lee Mitrothanasis, the officer before whom the foregoing deposition was taken, do hereby certify that the witness whose testimony appears in the foregoing deposition was duly sworn by me, that the testimony of said witness was taken by me electronically and thereafter reduced to typewriting by me or under my supervision; that said deposition is a true record of the testimony given by said witness, that I am neither counsel for, related to, nor employed by any of the parties to the action in which this deposition was taken; and, further, that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of the action.

*Sharon Mitrothanasis*
NOTARY PUBLIC OF THE
District of Columbia

My Commission Expires:
June 30, 2010