UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

AUG 3 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

STEVEN WOODRUFF, )
)
Plaintiff, )
)
v. )
) Civ. Action No. 06cv832 (RJL)
NATIONAL OPINION RESEARCH )
CENTER, )
)
Defendant. )

**MEMORANDUM OPINION**
(August 28, 2007)[#19]

Steven Woodruff has sued his former employer, the National Opinion Research Center ("NORC") for breach of contract, fraud, negligent misrepresentation and promissory estoppel. Currently before the Court is the defendant's motion for summary judgment. For the following reasons, defendant's motion will be GRANTED in part and DENIED in part.

**I. BACKGROUND**

In August 2004, Steven Woodruff, then a Mathematical Statistician with the United States Postal Service ("USPS"), submitted his resume and completed an application for a position at NORC.[1] Woodruff Dep., p. 39. Although he interviewed with the person in charge of the Statistics and Methodology Department, no decision on

---

[1] The National Opinion Research Center is a Chicago-based national research organization that conducts complex survey and data collection and empirical analysis.

1

his application was made at that time. In November 2004, NORC was awarded the National Immunization Survey ("NIS") contract by the Centers for Disease Control ("CDC"), which created additional staffing needs in the Statistics and Methodology Department. Thompson Dep., p. 64, 68; Harter Dep., p. 17-18. As a result, Woodruff was called back for an interview at NORC's office for possible employment as a statistician. Woodruff Dep., p. 44. According to Woodruff, his interviewers—Rachel Harter ("Harter"), a NORC vice president and Kirk Wolter ("Wolter"), a senior fellow at NORC—gave him the impression that NORC was looking to staff the NIS contract, that the project would last five years and that Woodruff would be employed for the length of the contract. *Id* at p. 98,100. Indeed, while he can not recall the exact language Wolter used, he contends that Harter specifically and falsely informed him that he would be employed for the length of NIS project. Woodruff Dep., p. 61, 131-132.

On January 5, 2005, a NORC human resources representatives, Yvonne Johnson, contacted Woodruff, and verbally offered him a position with the company as a Senior Statistician. Woodruff Dep., p. 75. According to NORC, Woodruff tentatively accepted the offer. Pl.'s Opp. to the Mot. Summ. Judg., Ex. 6. On January 11, 2005, NORC sent Woodruff a letter confirming the earlier verbal offer and detailing his position, salary and benefits (the "Offer Letter"). Def. Mot. for Summ. Judg., Ex. 9. The letter also provided that:

> While it is anticipated that your employment relationship with NORC will be productive and mutually beneficial, it is important for you to understand that all

> NORC employees are "at-will," which means that you or NORC may, for any reason or no reason, discontinue that employment relationship at any time.

*Id.* Woodruff signed and returned the letter the same day without additional comment in writing, or orally, about his impression that he would be employed for the length of the NIS contract. Def. Mot. for Summ. Judg., Ex. 9; Woodruff Dep., p. 95, 101.

In February 2005, Woodruff resigned from the United States Postal Service and began working in NORC's Washington D.C. office. Woodruff Dep., p. 15, 55. He was terminated from NORC on June 16, 2005, as part of a reduction in force in which other NORC employees were also laid off. *Id* at p. 110-111.

Plaintiff subsequently sued NORC alleging that he was promised a position for the five-year term of the NIS contract and that his termination after only four months constituted breach of his employment contract (Count III), fraud (Count I), negligent misrepresentation (Count II) and promissory estoppel (Count IV). Defendant has moved for summary judgment arguing, *inter alia*, that Woodruff was an at-will employee, that there is no evidence that NORC intentionally misled him as to the terms of his employment and that even assuming such representations were made, plaintiff's reliance on them was unreasonable.

Based on the evidence in the record and the applicable caselaw, the Court will GRANT defendant's motion for summary judgment as to plaintiff's breach of contract and fraud claim, but DENY the motion as to the negligent misrepresentation and promissory estoppel claims.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether an issue of material fact exists, the Court must view the facts in the light most favorable to the non-moving party, and draw all justiciable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of establishing that there are no genuine issues of material fact by identifying aspects of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to produce specific facts establishing a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the record could not lead a rational trier of fact to find for the non-moving party, then summary judgment is appropriate. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 2548.

## III. ANALYSIS

### A. THE BREACH OF CONTRACT CLAIM

In the District of Columbia, "absent express language indicating particular terms or duration of employment, the employment relationship is presumed to be at-will."

*Dunaway v. Int'l Bhd. Of Teamsters*, 310 F.3d 758, 766 (D.C. Cir. 2002) (citing *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1001 (D.C. Cir. 1996); *Daisley v. Riggs Bank, N.A.*, 372 F.Supp.2d 61, 67 (D.D.C. 2005). In order to rebut this presumption and prove breach of contract, a plaintiff must provide "evidence of clear contractual intent on the part of both the employer and the employee" to limit the employer's right to terminate its employees. *Choate v. TRW, Inc.*, 14 F.2d 74, 76 (D.C. Cir. 1994); *Daisley,* 372 F.Supp.2d at 67.

Here plaintiff argues that he and NORC entered into an enforceable oral agreement under which plaintiff would be employed for the duration of the NIS contract. Plaintiff alleges that during his interview, Harter and Wolter indicated that he would be employed for the duration of the NIS contract and that when he accepted NORC's verbal offer on January 11, 2005, these statements became the material terms of the contract.

Johnson's verbal offer, however, made no mention of Harter and Wolter's statements and referred plaintiff to the forthcoming Offer Letter for the specific terms of his employment. That letter, which confirmed Johnson's verbal offer, provided that "all NORC employees are 'at-will'", and that "you or NORC may, for any reason or no reason, discontinue the employment relationship at any time." Def. Mot. for Summ. Judg., Ex. 9. As noted above, plaintiff signed and returned the letter without annotation. Although the letter clearly indicated that it was not a contract, it was a clear statement of

NORC's understanding of the terms of the employment contract.[2] *Id.* Indeed, even assuming that Harter and Wolter had indicated that they *expected* to employ plaintiff for the duration of the NIS contract, they did not promise to employ Woodruff for a fixed term nor indicate that NORC intended to limit its ability to terminate Woodruff at-will. Finally, the fact that plaintiff signed and returned the Offer Letter, with its declaration that plaintiff was being hired as an at-will employee, casts serious doubt on his contention that he understood the contract to limit NORC's ability to terminate him at any time.

Given the evidence in the record, therefore, the Court finds that plaintiff cannot demonstrate a clear contractual intent by both parties to limit NORC's power to terminate the plaintiff at-will. Accordingly, the Court will GRANT the defendant's motion for summary judgment of plaintiff's breach of contract claim.

## B. PLAINTIFF'S FRAUD CLAIM

To prove a common law case of fraud under the law of the District, the plaintiff must show that the defendant: 1) made a false representation; 2) in reference to a material fact; 3) with knowledge of its falsity; 4) with the intent to deceive; 5) that action was taken in reliance upon the representation; and in cases involving commercial contracts negotiated at arm's length there is the further requirement 6) that the defrauded party's reliance be reasonable. *Daisley v. Riggs Bank, N.A.,* 372 F.Supp.2d 61 (D.D.C.

---

[2] The Court further notes that in August 2004, Woodruff submitted a written application for employment at NORC. Above the signature block, which plaintiff signed, the application provided that: "I understand that employment is 'at-will' and either party may terminate the employment at any time." Def. Mot. for Summ. Judg., Ex. 2, at 4.

2005)(quoting *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C. 1992)).

By his own admission, Woodruff cannot establish the third and fourth elements necessary to sustain a claim for fraud. Indeed, although Woodruff has alleged that the defendant "intentionally and knowingly mis[led] and induced Plaintiff into believing that he would be employed five years at NORC," Compl., ¶ 19, he conceded at his deposition that he does not know whether Harter was aware she made a false statement, nor whether Harter and Wolter intended to deceive him.. Woodruff Dep. P. 132-133. Moreover, although plaintiff argues that Harter and Wolter knew that NORC had limited work available for him, the evidence plaintiff has offered does not support the inference that Harter or Wolter deliberately misled Woodruff into believing that he would employed at NORC for five years. As a result, even viewing the facts in the light most favorable to the plaintiff, the Court does not believe that there is a genuine issue of fact as to whether NORC fraudulently induced the plaintiff to accept a position with the company. Accordingly, defendant's motion for summary judgment as to plaintiff's fraud claim will be GRANTED.

## C. PLAINTIFF'S NEGLIGENT MISREPRESENTATION AND PROMISSORY ESTOPPEL CLAIMS

In addition to his fraud and breach of contract claims, plaintiff has alleged that the representations made to him by Harter and Wolter and his reliance thereon, constituted

negligent misrepresentation and promissory estoppel.[3] Defendant has moved for summary judgment of these claims arguing, in essence, that the Offer Letter he received constituted, in effect, an express written contract and, therefore, plaintiff's reliance on NORC's representations was unreasonable. The Court, disagrees.

Although, Woodruff was an at-will employee, the fact that NORC *could* fire Woodruff at any time does not necessarily mean that NORC did *not* negligently misrepresent to Woodruff that his term of employment would last until the end of the NIS contract. Although defendant argues that plaintiff's reliance on representations made by Harter and Wolter was unreasonable given the terms of the Offer Letter, the Offer Letter, by its own admission, was not a contract. Def. Mot. for Summ. Judg., Ex. 9. Nor does the fact that the Offer Letter indicates that NORC intended to hire plaintiff as an "at-will employee" necessarily render it unreasonable for plaintiff to rely on representations that left him with the impression that he would be working at NORC at least until the completion of the NIS contract. To the contrary, the Court finds a genuine issue of fact

---

[3] In order to make a claim for negligent misrepresentation in the District of Columbia, the plaintiff must show: 1) a false statement or omission of fact which the defendant had a duty to disclose; 2) involving a material issue; 3) which the plaintiff reasonably relied to his detriment. *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1207 (D.C. 1999).
  To establish a promissory estoppel claim, the plaintiff must show that the defendant made a promise, which reasonably induced reliance, and on which the plaintiff relied to his detriment. *Bldg. Servs. Co. v. AMTRAK*, 305 F.Supp.2d 85, 95 (D.D.C. 2004) (citing *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F.Supp.2d at 97). The existence of an express written contract bars the plaintiff's use of the promissory estoppel doctrine. *Daisley*, 372 F.Supp.2d at 71 (citing Bldg. Servs. Co, 305 F.Supp.2d at 95-96); see also *Int'l Bus. Mach. Corp. v. Medlantic Healthcare Group*, 708 F.Supp. 417, 424 (D.D.C. 1989).

remains as to whether Woodruff's reliance on NORC's representations, in light of the Offer Letter's language, was reasonable. Accordingly, the Court will DENY defendant's motion for summary judgment of plaintiff's negligent misrepresentation and promissory estoppel claims.

/s/ Richard J. Leon
RICHARD J. LEON
United States District Judge